**KENAI PENINSULA BOROUGH, a Municipal Corporation, Appellant,**

v.

**ENGLISH BAY VILLAGE CORPORATION, Appellee.**

No. S–2033.

Supreme Court of Alaska.

Oct. 13, 1989.

Kristine A. Schmidt, Deputy Borough Atty., and Thomas R. Boedeker, Borough Atty., Soldotna, for appellant.

R. Collin Middleton, Middleton, Timme & McKay, Anchorage, for appellee.

Before MATTHEWS, C.J., RABINOWITZ, BURKE, COMPTON and MOORE, JJ.

## OPINION

MATTHEWS, Chief Justice.

### I.

On July 22, 1986, English Bay Village Corporation (English Bay) obtained a default judgment against the Kenai Peninsula Borough. This judgment enjoined the Borough from pursuing foreclosure pro-

ceedings against the corporation for non-payment of real property taxes assessed for the 1982 and 1983 tax years and from enforcing a 1982 judgment of foreclosure against English Bay lands for non-payment of 1981 taxes.[1] After the default judgment was entered the Borough allowed the time for appeal to run without taking an appeal. On September 9, 1986, it moved to set aside the default judgment under Civil Rule 60(b)(1), (3), and (4) for mistake, neglect, misconduct, and fraud of an adverse party, and because the judgment was void for lack of personal jurisdiction. The trial court denied this motion. It found no grounds of mistake, neglect, misconduct or fraud under Rule 60(b)(1) and (3), and concluded that the Borough had waived its jurisdictional objection by making a voluntary appearance.

After the default judgment was entered, English Bay filed a motion for attorney's fees. This was granted after the Rule 60(b) motion was denied and an award of $10,000 was made.

There are five points on appeal: (1) that the superior court erred in not dismissing this case prior to default judgment for want of prosecution; (2) that the superior court erred in issuing a default judgment; (3) that the superior court erred "in ruling that the statutory notice procedures for tax foreclosure actions did not accord due process to the property owners;" (4) that the superior court erred and abused its discretion in denying the motion to set aside the default judgment; and (5) that the superior court erred in awarding attorney's fees.

■ Only the fourth and fifth points are before us. The first three points concern the entry of the default judgment and actions taken before it was entered. Any such challenge should have been taken by appeal. Thus, as in *Anderson v. State, Department of Highways*, 584 P.2d 537, 540 (Alaska 1978) the merits of the superior court's underlying judgment are not properly before us. A Rule 60(b) motion is not a substitute for an appeal. *Anderson,* 584 P.2d at 540.

■ With respect to the Borough's fourth point on appeal, that the default judgment should have been set aside, the excusable neglect-mistake grounds under Rule 60(b)(1) and fraud and other misconduct grounds under Rule 60(b)(3) are likewise foreclosed from consideration. Those grounds concern facts which were known to the Borough at the time the default judgment was entered. Contentions based on facts which are known to a party at a time when a direct appeal is possible must either be raised on direct appeal, *see Friedman v. Wilson Freight Forwarding Co.,* 320 F.2d 244, 247 (3d Cir.1963), or in a Rule 60(b) motion made during the time for taking the appeal. *Anderson,* 584 P.2d at 540 nn. 9, 11. As void judgments are not subject to this rule, the only argument properly before us on the merits is whether the trial court erred in denying the motion to set aside the default judgment on the grounds that the judgment is void.

## II.

### A.

In order to understand the Borough's contention that the judgment is void, the facts must be set forth in some detail.

English Bay filed suit against the Borough on June 27, 1984, challenging the Borough's assessment of taxes on its lands for 1981, 1982, and 1983, and seeking to set aside a judgment for tax foreclosure which the Borough had obtained. Accompanying the complaint were a summons to the Borough and a motion for preliminary injunction. English Bay contemplated that the clerk of court would serve the Borough by mail under Civil Rule 4(h) by mailing the documents by certified mail to the Borough Attorney, Thomas Boedeker. Although a receipt allegedly showing mail delivery of such documents was returned, the Borough Attorney claims that he did not receive a copy of the filed complaint. He states that

---

1. The judgment also permanently enjoins the Borough from assessing and levying real property taxes on lands owned by the corporation which are neither leased nor being developed. Whether this provision extends beyond the tax years 1981, 1982, and 1983 is not before us.

he was sent an unfiled copy, without a court caption or a signature, which he assumed was a negotiating ploy.

In any case, by July 27, 1984, Boedeker knew that a complaint had been filed and that an answer was due. On that date he signed a stipulation in the foreclosure action between the Borough and English Bay which, in return for extending the redemption period in the foreclosure action, extended the time for the Borough to answer the complaint in the present case until August 30, 1984. The stipulation was filed in the foreclosure action but not in this case. No answer was ever filed.

On October 16, 1984, English Bay's motion for preliminary injunction, to which no opposition had been filed, was granted. The order contained an endorsement indicating that a copy was mailed to counsel for the Borough, who, however, denies receiving it.

■ English Bay applied for an entry of default on November 13, 1984. The application was not served on the Borough nor was inquiry made as to whether the Borough's attorney intended to proceed.[2] The court clerk entered a default on November 26, 1984. The clerk certified that a copy of the entry of default was sent to Borough counsel Boedeker on November 28, 1984. Boedeker claims he did not receive this.

For seventeen months after entry of default, English Bay took no action. On May 8, 1986, the clerk sent the parties a Notice and Order of Dismissal for lack of prosecution pursuant to Civil Rule 41(e). The notice states: "If good cause to the contrary is not shown within 33 days of the mailing of this notice, this action will be dismissed without further notice . . . ." On June 13, 1986, English Bay filed an application for default judgment.

The Borough evidently believed the case would be dismissed on the thirty-third day, as the court's Notice and Order of Dismissal stated. On June 16, 1986, the Borough moved to dissolve the court's 1984 preliminary injunction at the same time it dismissed the case. This was the first time the Borough had submitted anything to the court in this lawsuit.

On June 23, 1986, the Borough filed a motion and a supporting memorandum which opposed English Bay's application for a default judgment and sought dismissal of the case under the terms of the Notice and Order of Dismissal. The Borough did not state, or preserve, a defense of lack of proper service. English Bay opposed the Borough's motion to dismiss. The court entered default judgment against the Borough on July 22, 1986.

At this point, the Borough allowed the thirty-day appeal period provided by Appellate Rule 204(a) to lapse. On September 9, 1986, three weeks after the appeal period lapsed, the Borough moved to set aside the default judgment pursuant to Civil Rule 60(b). The court denied the Borough's motion on January 9, 1987, and this appeal followed.

### B.

■ The Borough argues that the judgment is void because the court never obtained jurisdiction over the Borough by proper service. There are two defects identified which do not depend on personal credibility. First, the summons and complaint was not delivered to the "chief executive officer or chief clerk or secretary" of the Borough as required by Civil Rule 4(d)(9). Second, service by mail upon a public corporation is not allowed under Civil Rule 4(h). While we believe that a plau-

---

**2.** We have held that such an inquiry should be made where counsel for the defendant has been identified:

> When [a lawyer] knows the identity of a lawyer representing an opposing party, he should not take advantage of the lawyer by causing any default or dismissal to be entered without first inquiring about the opposing lawyer's intention to proceed.

American College of Trial Lawyers Code of Trial Conduct, No. 14A, at 149 (1971–72), *quoted in Demoski v. New,* 737 P.2d 780, 786 (Alaska 1987); *Hertz v. Berzanske,* 704 P.2d 767, 772 (Alaska 1985). This failure would ordinarily justify setting aside a default judgment under Civil Rule 60(b)(3), *Hertz,* 704 P.2d at 772–73; *City of Valdez v. Salomon,* 637 P.2d 298, 299 (Alaska 1981), but it does not render the judgment void.

sible case has been made by the Borough that service was defective in these respects, it is not necessary to resolve these issues because personal jurisdiction attached when the Borough appeared on June 16, 1986, without challenging the validity of service.

A court acquires personal jurisdiction over one who appears without challenging jurisdiction. Alaska Statute 09.05.010 provides: "The voluntary appearance of the defendant is equivalent to personal service of a copy of the summons and complaint upon the defendant." [3] The first such appearance, as noted, came on June 16, 1986, when the Borough made its first motion in this case. At that point, personal jurisdiction attached. The Borough is deemed to have been served then with a copy of the summons and complaint under AS 09.05.-010. For this reason, the court had personal jurisdiction over the Borough when the default judgment was entered.

### III.

Our dissenting colleague has expressed the view that the default judgment is void because when the superior court entered it, the court "plainly usurped its power." Plain usurpation occurred, according to the dissent, because there was no prior valid entry of default and no valid application for a default or default judgment. These defects existed because the Borough had not been properly served with the summons or complaint. In our view, this position is erroneous both procedurally and substantively.

The position is wrong procedurally because the Borough did not argue before the trial court or on appeal that the judgment is void under the plain usurpation of power standard. Points not raised in the court below are ordinarily considered waived and will not be considered on appeal, except where plain error has been committed. *In*

*re L.A.M.*, 727 P.2d 1057, 1059 (Alaska 1986). "Plain error exists where an obvious mistake has been made which creates a high likelihood that injustice has resulted." *Miller v. Sears*, 636 P.2d 1183, 1189 (Alaska 1981). Plain error will not be considered unless "it is so substantial as to result in a miscarriage of justice." *In re C.L.T.*, 597 P.2d 518, 523 (Alaska 1979).

Further, where an issue is not briefed on appeal, it will not be considered. *E.g., Wetzler v. Wetzler*, 570 P.2d 741, 742 n. 2 (Alaska 1977). Exceptions to this rule are rare. We have, on very few occasions, found an unbriefed question to be "critical to a proper and just decision." In those cases, we have directed the parties to brief the question and then decided it. *E.g., Vest v. First Nat'l Bank of Fairbanks*, 659 P.2d 1233, 1234 n. 2 (Alaska 1983); *Matanuska–Susitna Borough v. Hammond*, 726 P.2d 166, 182 (Alaska 1986).

In the present case, we have not called for briefing on the question of the application of the plain usurpation of power standard. Justice does not require such an extraordinary step in this case. Additionally, the trial court did not commit plain error amounting to a miscarriage of justice in failing to consider the default judgment to be void under the plain usurpation standard.

We take this view because it is clear that by July 27, 1984, the Borough attorney, Mr. Boedeker, knew of this lawsuit and knew that he had to file an answer to it. Yet, he unaccountably took no action in this case until June 16, 1986. Since counsel has been afforded notice and an opportunity to be heard, and has given no credible excuse for inaction, we do not view this case as one involving a miscarriage of justice or as one in which justice requires the extraordinary step of a court-raised point on appeal.

Even if the plain usurpation of power standard had been argued below or briefed on appeal, it would not apply. The stan-

---

**3.** Alaska Rule of Civil Procedure 12(h)(1) states: A defense of lack of jurisdiction over the person, improper venue, insufficiency of process, or insufficiency of service of process is waived (A) if omitted from a motion in the circumstances described in subdivision (g)

[entitled "Consolidation of Defenses in Motion" ], or (B) if it is neither made by motion under this rule nor included in a responsive pleading or an amendment thereof permitted by Rule 15(a) to be made as a matter of course.

dard should be rarely and sparingly employed. 7 J. Moore & J. Lucas, *Moore's Federal Practice* ¶ 60.25[2], at 60–227 to –230 (2d ed. 1985) (hereinafter *Moore's Federal Practice*). In order to protect the finality of judgments, care must be taken to distinguish between true instances of usurpation of power, and instances where the court has merely committed prejudicial error. Some instances of what may be regarded as true usurpation are illustrated in the following authorities: *Kalb v. Feuerstein*, 308 U.S. 433, 60 S.Ct. 343, 84 L.Ed. 370 (1939) (although jurisdiction in state court was valid at the outset, court-ordered foreclosure which violated federal bankruptcy statute's stay of state proceedings was a nullity); *Pacurar v. Hernly*, 611 F.2d 179 (7th Cir.1979) (district court granted motion to dismiss for lack of diversity with prejudice: the "with prejudice" aspect of the judgment was an adjudication on the merits which was precluded since there was no diversity jurisdiction); *Jordon v. Gilligan*, 500 F.2d 701 (6th Cir.1974) (award of attorney's fees against unconsenting sovereign state void as prohibited by the 11th Amendment).

■ Application of the plain usurpation standard should be limited to cases which involve an arrogation of authority which the court clearly lacks. Unless the doctrine is so limited, it will become a means by which courts can declare judgments to be void merely because serious mistakes have been made.

■ In the present case, the mistakes identified by the dissent as justifying a declaration of voidness under the plain usurpation of power standard are issuing a default judgment (1) in the absence of a prior valid entry of default, (2) without a valid application for default, and (3) without a valid application for a default judgment. These acts do not involve usurpation of power, plain or otherwise. The following reasons support this conclusion.

First, taking a default judgment without notice, while a serious error, should not ordinarily be regarded as rendering the underlying judgment void:

And a court has stated that where a default judgment is taken without notice, as provided in Rule 55(b)(2), "there was a failure of due process and the judgment a nullity." This position cannot be supported. While the failure to give the required notice is generally regarded as a serious procedural irregularity that may afford the basis for reversal on appeal, or for relief under an appropriate clause of Rule 60(b) and in conjunction with other irregularities may render the judgment void, the error should not usually be treated as so serious as to render the judgment void. It should be considered in the light of surrounding circumstances and will, at times, be harmless.

7 *Moore's Federal Practice, supra* p. 10, ¶ 60.25[2] at 60–237 to –238 (footnotes omitted). *See also* 6 *Moore's Federal Practice, supra* p. 10 ¶ 55.09, at 55–49 (2d ed.1986):

While the above principles are those of general applicability, an occasional atypical case departs from them. *Bass v. Hoagland*, [172 F.2d 205 (5th Cir.1949), *cert. denied*, 338 U.S. 816, 70 S.Ct. 57, 94 L.Ed. 494 (1949)] for example, sustained a collateral attack on a judgment where, as one of a number of procedural errors, plaintiff had failed to give the defendant 3 days' written notice of the application for judgment as required by Rule 55(b)(2). *Certainly as a general proposition such a procedural error does not justify a collateral attack upon a default judgment.*

(Footnotes omitted, emphasis added.) C. Wright, A. Miller & M. Kane, *Federal Practice & Procedure* ¶ 2687, at 438–40 (2d ed.1983) states: "A failure to give the three days' notice when it is required generally is considered a serious procedural error that justifies the reversal or the setting aside of the default judgment. *The judgment, however, usually is not considered void or subject to collateral attack.*" (Footnotes omitted, emphasis added.) Since the present default judgment was taken thirty days after the Borough filed opposition to the motion for default judgment, these authorities demonstrate, *a*

*fortiori,* that the default judgment here should not be held to be void.

Second, the dissent's conclusion that there was no valid application for a default is dubious. It is clearly correct to consider that the Borough was served with the application for default judgment because the Borough actually filed opposition to that application on June 23, 1986. An application for a default judgment made where no default has been entered has been held to imply that a default is also sought. *System Indus., Inc. v. Han,* 105 F.R.D. 72, 74 (E.D.Pa.1985); *Fisher v. Taylor,* 1 F.R.D. 448 (E.D.Tenn.1940); *see also Meehan v. Snow,* 652 F.2d 274, 276 (2d Cir.1981).

What remains is the alleged error of entering a default judgment without first entering a default. It is by no means clear that a default and default judgment may not be entered simultaneously or that a default judgment may not be entered immediately following a default. Several federal courts have held either that simultaneous applications are permissible or that the initial step of obtaining a default may be by-passed. *Systems Indus., Inc.,* 105 F.R.D. at 74; *Breuer Elec. Mfg. Co. v. Toronado Sys. of Am., Inc.,* 687 F.2d 182, 185 (7th Cir.1982). *Systems Industries, Inc.* addressed this issue:

> No default has been entered in this case, because plaintiff has not filed any application with the clerk for entry of a default. Accordingly, I will treat plaintiff's motion as one which requests both (1) an order directing the clerk to enter a default against the defendants, and (2) entry of a default judgment. As a practical matter, I need consider only whether a default judgment is appropriate in this case: if it is, then it follows that the lesser standard of Rule 55(a) is satisfied; if not then entry of a default by the Clerk would be a waste of effort.

*System Indus., Inc.,* 105 F.R.D. at 74. *See also Meehan,* 652 F.2d at 276 (dictum), in which the Second Circuit stated:

> The omission of the entry of a default was largely technical because the hearing on the appellee's motion for the entry of a default judgment afforded the appellants the same opportunity to present mitigating circumstances that they would have had if a default had been entered and they had then moved under Rule 55(c) to set it aside.

Although the better interpretation of Civil Rule 55 seems to be that obtaining a default and a default judgment is properly a two-step process,[4] nevertheless the first step in the process, obtaining a default, is largely a formality. 6 *Moore's Federal Practice, supra* p. 10, ¶ 55.03[2], at 55–17, ¶ 55.10[1], at 55–51 (2d ed. 1986) ("The entry of default is largely a formal matter"). Any error by the trial court in entering a default judgment without first entering a default, does not involve an arrogation of authority. Federal courts operating under similar rules would regard it either as not error at all or as a minor procedural shortcoming.

For these reasons, we conclude that the plain usurpation of power standard does not apply to the judgment in this case.

## IV.

The trial court awarded English Bay $10,000 in attorney's fees pursuant to Civil Rule 82 on February 25, 1987. The trial court found that English Bay had actually incurred fees of $19,895.

The Borough's first challenge to this award is that the superior court erred in allowing English Bay to file an untimely supplemental memorandum five months after the initial motion for attorney's fees was made. This contention lacks merit. The supplemental memorandum itemized fees requested for work done after the

---

4. Alaska Civil Rule 55(c)(2) requires counsel to file "a memorandum of default" when applying to the court for a default judgment, thus implying a two-step process. While the Federal Rules of Civil Procedure have no similar provision, the local rules of the United States District Court for the Southern District of New York, under which *Meehan* was decided, do contain a similar requirement, 652 F.2d at 276 n. 4, a fact which did not change the court of appeals' conclusion that the omission of the entry of default was largely technical.

initial attorney's fees motion was filed. This work related primarily to English Bay's efforts in opposing the Borough's motion for relief from the default judgment under Civil Rule 60(b). The Borough also complains that it was not given an opportunity to respond to the supplemental memorandum. This too lacks merit because the superior court granted the Borough's motion to reconsider the award in order to entertain the supplemental opposition of the Borough. After the opposition was considered, the initial award was reaffirmed.

The Borough also complains that the award is excessive. Trial courts have broad discretion in fixing an award of attorney's fees under Civil Rule 82. *Gold Bondholders Protective Council v. Atchison, Topeka & Santa Fe Ry.*, 658 P.2d 776, 778 (Alaska 1983). The objective of Civil Rule 82 is to provide the prevailing party with reasonable partial compensation. *Davis v. Hallett*, 587 P.2d 1170, 1171–72 (Alaska 1978). The award of just over fifty percent of English Bay's actual fees is consistent with this purpose and not an abuse of discretion.

The judgment is AFFIRMED.

MOORE, Justice, dissenting.

The court concludes that the trial court did not abuse its discretion in denying the Kenai Borough's motion to set aside the default judgment. I would vacate the entry of default judgment under either of two alternative grounds and remand the case for trial.

The majority opinion's factual recitation from the record is incomplete. So that the reader is able to fully understand and fairly evaluate my reasons for dissenting, I must set forth additional facts which, in my opinion, require a reversal of the trial court's entry of a default judgment.

I.

In the late 1970s, English Bay entered into a series of contracts for the harvesting of timber on its lands. This resulted in the cutting of approximately 6 million board feet from 1978 through 1980. After 1980, English Bay undertook no further logging or development of those lands.

In 1981, the Borough began levying real property taxes on some of English Bay's properties.[1] English Bay failed to pay the taxes. Consequently, the Borough brought a foreclosure action. *In Re Kenai Peninsula Borough 1982 Foreclosure Proceedings on Properties for the Real Property Taxes Delinquent for the Tax Year of 1981*, 3KN–82–302 Civ. In August of 1982, the superior court awarded judgment and a decree of foreclosure in favor of the Borough. English Bay did not appeal. Subsequently, the Borough obtained two additional foreclosure judgments on other English Bay properties in 3KN–83–334 Civ. and 3KN–84–139 Civ., covering tax years 1982 and 1983.

The Borough claims that during this entire time it strictly complied with the elaborate statutory procedures for giving notice of the delinquencies and foreclosures.[2] English Bay never claimed otherwise.

Although the Borough could have received deeds to the properties on January 3, 1984, pursuant to the first foreclosure action, the Borough granted English Bay an extension until July 1 to pay the taxes and avoid losing the properties. English Bay continued to do nothing in the three foreclosure actions, and it never appealed.

On June 26, 1984, English Bay sent the clerk of court copies of the summons and complaint in the present action, to be filed and then sent to the Borough's attorney by certified mail. However, there is no additional evidence that filed copies of the com-

---

1. Village corporation lands conveyed pursuant to ANCSA are not subject to local real property taxes unless they are "developed or leased." 43 U.S.C. § 1620(d)(1); *see also* AS 29.53.020(a)(9), (k)(1) (further defining "developed" as the term is used in 43 U.S.C. § 1620(d)(1)). The Borough evidently believed that the lands it was taxing

were "developed or leased." English Bay contends that many of the taxed parcels were never logged or otherwise developed.

2. The procedures required at that time were set forth in AS 29.53.010–29.53.390 (repealed by ch. 74, § 88, SLA 1985).

plaint and summons were actually served on the Borough. In an affidavit, the Borough's attorney stated that he received in a certified envelope from English Bay's attorney

> a copy of what was apparently a proposed complaint ... [that] did not contain a court caption or show any evidence that it had been filed. The document was not accompanied by a summons or any other correspondence indicating that a suit had been actually filed.

The Borough's attorney assumed the unfiled complaint was nothing other than a negotiating ploy, since he was actively negotiating with English Bay's attorney regarding the earlier foreclosure actions.

A month later, the Borough's attorney signed a stipulation in the 1982 foreclosure action, 3KN–82–302 Civ., that refers to the present action by name. However, the action number was left blank and was written by hand at a "point much later in time." The stipulation provided that the Borough would extend English Bay's redemption period until August 30, 1984, in the foreclosure action, and the Borough would get a similar extension of time to file an answer in the present case.

On October 16, 1984, the superior court issued a preliminary injunction enjoining the Borough from pursuing foreclosure proceedings. The usual clerk's certification was absent from the face of the document. Instead, a penned notation indicates that a copy was sent to "KPB"—the defendant. The notation was not signed or initialed. In his affidavit, the Borough's attorney claims he did not receive the copy of the injunction.

English Bay applied for a default. There is no evidence that English Bay's attorney or the court clerk served the application on the Borough, or that either inquired whether the Borough's attorney intended to proceed. Nevertheless, on November 26, 1984, the clerk entered a default against the Borough. The clerk's dated and initialed certification appears on the order. The certification states that a copy was sent to "KPB"—the Borough. In his affidavit, the Borough's attorney claims he did not receive it.

Meanwhile, for almost a year, the Borough continued to send tax foreclosure notices to English Bay, behaving as if it had no knowledge of the injunction against the Borough. The Borough's attorney claims that he did not become aware of the lawsuit, injunction, and default until August of 1985, when he received from English Bay copies of the relevant documents and a letter asking the Borough to stop sending further tax foreclosure notices.

For seventeen months after entry of default, English Bay took no action in this case and did not seek a default judgment. Finally, the clerk sent the parties a Notice and Order of Dismissal for Lack of Prosecution pursuant to Civil Rule 41(e). The notice stated: "If good cause to the contrary is not shown within 33 days of the mailing of this notice, this action will be dismissed without further notice...." The date of mailing is indicated on the face of the document as May 8, 1986—a Thursday.

The thirty-three days lapsed on June 10, 1986—a Tuesday. English Bay had taken no action to prevent dismissal. However, on June 9 or 10, English Bay's attorney called the court clerk's office to find out whether the action would be dismissed on the 10th. He spoke with a staff person who stated that the court was busy and would not have a chance to review files to dismiss cases for want of prosecution until at least the end of the week. Based on this conversation, English Bay's attorney concluded that the case would not be dismissed on June 10. He sent an application for default judgment to the court by regular mail on June 10. The court received and filed the application on June 13, 1986, three days after the thirty-three day limit expired.

Meanwhile, the Borough justifiably believed the case would be dismissed on the thirty-third day, as the court's Notice and Order of Dismissal plainly stated. The deputy borough attorney personally checked the court's file on this case on June 12 and found that English Bay had filed nothing during the thirty-three day

period. The Borough then moved the court to dissolve the 1984 injunction at the same time it dismissed the case. The Borough mailed that motion to English Bay on June 13 and filed it with the court on Monday, June 16, 1986. This was the first time the Borough submitted anything to the court or plainly acknowledged this lawsuit.

Upon learning of English Bay's application for default judgment, the Borough moved the court to deny it and dismiss the case. That motion was grounded solely on English Bay's failure to respond timely to the court's Notice and Order of Dismissal. The Borough did not state or preserve its defense of lack of proper service. English Bay filed memoranda opposing the Borough's motion to dismiss and requested oral argument. Without permitting oral argument, the superior court issued judgment in favor of English Bay on July 22, 1986, and awarded $10,000 in attorney's fees.

The judgment declared that the Borough violated ANCSA by taxing lands which had been logged in prior tax years but were left untouched thereafter. It also declared that the Borough's 1982 foreclosure judgment void since the taxation was illegal and the judgment was obtained "without providing adequate notice to English Bay." Furthermore, the judgment permanently enjoined the Borough from pursuing foreclosure proceedings against English Bay for the tax years 1982 and 1983.[3]

At that point, the Borough inexplicably allowed the thirty-day appeal period to lapse without filing an appeal. Three weeks after the appeal period lapsed, the Borough filed a motion to set aside the default judgment pursuant to Civil Rules 55(e) and 60(b). The Borough argued for relief under subparagraphs (1), (3), and (4) of Civil Rule 60(b). It also presented three defenses which it considered meritorious: lack of proper service,[4] res judicata, and proper taxation on the merits.

After oral argument, the superior court denied the Borough's motion. The court did not reach the question whether the Borough's defenses were meritorious. Rather, it found that the requirements of Civil Rule 60(b)(1), (3), and (4) were not satisfied.

The Borough appeals from that denial, arguing that (1) Civil Rule 41(e) required the superior court to dismiss this case for lack of prosecution exactly thirty-three days after it issued its Notice and Order of Dismissal, and the court had no discretion to relax the thirty-three day rule;[5] (2) pursuant to Civil Rule 55(g), a default judgment should not be permitted against political subdivisions of the State;[6] (3) the default judgment violated Civil Rule 24(c) in that it found a statute unconstitutional without giving notice to the State;[7] and (4) the judgment is void.

## II.

### A. Dismissal Pursuant to Alaska R.Civ.P. 41(e)

The Borough argues that Civil Rule 41(e) required the superior court to dismiss this case for lack of prosecution exactly 33 days

---

3. The court seems to have been unaware that the proceedings had resulted already in judgments in favor of the Borough and that English Bay failed to appeal these judgments in a timely manner.

4. Lack of personal jurisdiction could be both a meritorious defense and a ground for relief under 60(b)(4).

5. Until amended by Supreme Court Order 834 effective August 1, 1987, Civil Rule 41(e) stated: "If good cause to the contrary is not shown at a call of the calendar or within 33 days of mailing of a notice to show cause in writing, the action shall be dismissed." The Borough's argument is based on the use of the word "shall" in the rule.

6. Alaska R.Civ.P. 55(g) provides: "No default judgment shall be entered against the state or an officer or agency thereof unless the claimant establishes the claim or right to relief by evidence satisfactory to the court." The Borough urges us to "extend Rule 55(g) and apply it to political subdivisions of the state."

7. Alaska R.Civ.P. 24(c) provides in part:

When the constitutionality of a state statute affecting the public interest is drawn in question in any action to which the state or an officer, agency, or employee thereof is not a party, the court shall notify the Attorney General of Alaska of such fact, and the staff shall be permitted to intervene in the action.

after it issued its Notice and Order of Dismissal and the superior court had no discretion to relax the 33 day rule.[8] Civil Rule 41(e) specifically states that "[i]f good cause to the contrary is not shown at a call of the calendar or within 33 days of mailing of a notice to show cause in writing, the action *shall* be dismissed." (Emphasis added). Yet the superior court for some unknown reason completely disregarded the plain words of its own Notice and Order of Dismissal. The superior court's failure to abide by its own order clearly created considerable confusion between the parties. If the court's order did not mean what it said, then it should not have been issued in the first place.

Consequently, in my view the case was dismissed by operation of law after 33 days.[9] *See Champion Oil Co., Inc. v. Herbert*, 552 P.2d 670, 672 (Alaska 1976) (automatic dismissal). Although it may have been proper for English Bay to move to reopen the case pursuant to Civil Rule 77, any other proceedings, including the court's entry of default judgment, that occurred in the absence of such a motion should have been declared null and void. However, because the Borough failed to appeal the trial court's entry of default judgment within the 30–day period, I agree with the majority that this error of law alone would not normally be a ground for relief.

B. *The Default Judgment Was Improper in That It Found a Statute Unconstitutional without Giving Notice to the State*

Civil Rule 24(e) provides in part:
When the constitutionality of a state statute affecting the public interest is drawn in question in any action to which the state or an officer, agency, or employee thereof is not a party, the court shall notify the Attorney General of Alaska of such fact, and the staff shall be permitted to intervene in the action.

The Borough argues that a default judgment was improper because (1) English Bay's complaint specifically questioned the constitutionality of state statutes regarding notice in foreclosure proceedings, (2) the court did not notify the Attorney General, and (3) the court's default judgment impliedly found the statutes unconstitutional. Under Civil Rule 60(b)(1), (2) and (3), these arguments have little to do with mistake, inadvertence, surprise, excusable neglect, newly discovered evidence, or fraud. Nonetheless, the trial court's failure to notify the attorney general would be serious enough to void a judgment under Civil Rule 60(b)(4) if actual prejudice could be shown. The judgment here clearly resolves the substantive issues of the case, stating:

[T]he Kenai Peninsula Borough violated § 21d of ANSCA, as amended.... [T]he August 11, 1982, Judgment and Decree of Foreclosure entered against English Bay Corporation is void and unenforceable, since it was obtained after illegal taxation and without providing adequate notice to English Bay....

The parties do not dispute that the Borough followed the statutory notice provisions precisely. Yet, for some unexplained reason the superior court held the notice statutes unconstitutional as applied to English Bay.[10] In my view, the superior court's entry of the default judgment on this basis was clearly prejudicial to the state's interest.

---

**8.** In my view, the argument was raised below, albeit briefly.

**9.** At oral argument, English Bay's attorney contended that he mailed his motion for default judgment on June 10, 1986—the 33rd day after the court's order to show cause. English Bay contends that its motion was actually made on the day it was mailed, pursuant to Civil Rule 5(b) which states: "Service by mail is complete upon mailing." However, English Bay is confused. "Service" in Rule 5(b) refers to the transmittal of papers to the other party, not the court. Rule 5 does not say that *filing* by mail is complete upon mailing. In fact, English Bay's motion does not indicate whether service on the Borough was ever accomplished.

**10.** Civil Rule 24(e) does not distinguish between whether a statute is challenged as facially unconstitutional or unconstitutional as applied. I see no reason why Rule 24(e) should not apply to both types of challenges.

Again, because the Borough failed to appeal within the statutory period, this error of law alone would not normally be a ground to set aside the default judgment.

## C. *The Judgment Is Void*

The Borough's most serious argument is that the judgment is void due to lack of personal jurisdiction. As this court stated in *Aguchak v. Montgomery Ward Co.*, 520 P.2d 1352, 1354 (Alaska 1974) (footnote omitted):

> A judgment is void and subject to attack under F.R.Civ.P. 60(b)(4) if the court that rendered it lacked personal jurisdiction over the defendant.... Although under other subsections of Rule 60(b) the movant must show that denial of the motion below was an abuse of discretion in order to prevail on appeal, no question of the lower court's discretion is presented by a Rule 60(b)(4) motion because the validity of a judgment is strictly a question of law. Nor need the movant show that he could present a meritorious defense in a subsequent proceeding, again because a void judgment is entitled to no respect whatever.

I would reverse the trial court on the ground that the judgment was void due to lack of personal jurisdiction. Under Federal Rule of Civil Procedure 60(b)(4), the wording of which is identical to Alaska Civil Rule 60(b)(4), a judgment is void and subject to attack if the court that rendered the judgment lacked subject-matter jurisdiction or personal jurisdiction or if it otherwise "involves a plain usurpation of power." 7 J. Moore & J. Lucas, *Moore's Federal Practice* ¶ 60.25[2], at 60–225 to 60–229 (2d ed. 1985). Following those guidelines, a reviewing court must first examine whether the superior court had personal jurisdiction over the Borough in the present case.[11]

Proper service is one way a court can legally obtain personal jurisdiction over a defendant. In the present case, English Bay attempted to serve process on the Borough. However, for the reasons stated below, the attempted service of process was inadequate.

First, service on a public corporation such as the Borough must be made "by delivering a copy of the summons and of the complaint to the chief executive officer or chief clerk or secretary thereof." Alaska R.Civ.P. 4(d)(9). English Bay claims only to have served the Borough's attorney. It does not claim to have ever served Borough Mayor Stan Thompson or Borough Clerk Joanne Brindley.

The analogous Federal Rule of Civil Procedure 4(d)(6) allows service upon a municipal corporation only by delivering a copy of the summons and the complaint to the chief executive officer, or as otherwise allowed by state law. Under the federal rule, service is invalid "if process is delivered to one who is not the 'chief executive officer' of the entity." 2 J. Moore & J. Lucas, *supra* ¶ 4.30, at 4–251 (2d ed. 1986). Given the public importance of lawsuits against boroughs and other public corporations, I favor the same strict interpretation of Alaska Civil Rule 4(d)(9). Here, I do not consider English Bay's error to be minor. English Bay's attempted service on the Borough was legally insufficient.

Second, pursuant to Civil Rule 4(d)(9), service upon a borough cannot be accomplished by mail.[12] The rule plainly states that process must be "delivered." Under Federal Rule of Civil Procedure 4(d)(6), "delivery" means personal delivery by one au-

---

11. The parties do not dispute that the superior court had subject-matter jurisdiction in this suit.

12. Alaska R.Civ.P. 4(d) states in part:

The summons and complaint shall be served together.... Service shall be made as follows:

    (4) *Corporations.* Upon a domestic or foreign corporation, by delivering a copy of the summons and of the complaint to an officer,

a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process.

    (9) *Public Corporation.* Upon a borough or incorporated city, town, school district, public utility district, or other public corporation in the state, by delivering a copy of the summons and of the complaint to the chief executive officer or chief clerk or secretary thereof.

thorized to serve process; mail service is insufficient. 2 J. Moore & J. Lucas, *supra,* ¶ 4.30, at 4–252; 4A C. Wright & A. Miller, *Federal Practice and Procedure* § 1109, at 172 (1987); *see also Cambridge Mut. Fire Ins. Co. v. City of Claxton, Georgia,* 720 F.2d 1230 (11th Cir.1983). I see no reason to construe Alaska's rule differently. Although mail service is allowed on "corporations" pursuant to Alaska Civil Rule 4(h),[13] I interpret "corporations" in Civil Rule 4(h) as excluding public corporations, since "corporations" and "public corporations" are treated differently under Rule 4(d). Since English Bay alleges no service on the Borough other than by mail, its service was invalid.

Third, the Borough claims that it never received any summons whatsoever, and also never received a complaint that had been filed by the court. In an affidavit, the Borough's attorney admits he received an unfiled copy of a complaint (without a case number), but he assumed it was nothing more than a negotiating threat in the various pending foreclosures. Although English Bay's affidavits on this point are confusing, they do not seem to contradict the Borough's attorney. The affidavits indicate that a legal secretary in the office of English Bay's attorney either mailed or delivered copies of the summons and complaint to the court clerk, to be filed and then mailed to the Borough's attorney. There is no separate affidavit showing exactly what was mailed to the Borough or

when. An envelope was mailed to and received by the Borough's attorney, as evidenced by a certified mail return receipt. However, English Bay presented no evidence of the contents of that envelope.[14] Thus, taking the assertions of the Borough's attorney at face value, it seems that no proper summons and complaint were ever served.

Even without proper service of process, Alaska courts can acquire personal jurisdiction over a defendant if the defendant makes an appearance. Alaska Statute 09.-05.010 provides: "The voluntary appearance of the defendant is equivalent to the personal service of a copy of the summons and complaint upon the defendant." [15]

The Borough undertook three actions that conceivably could be regarded as voluntary appearances sufficient to confer personal jurisdiction in this action: (1) On July 30, 1984, the Borough's attorney signed a stipulation in the 1982 foreclosure action (not the present case) that refers to the present action by name. (2) On June 16, 1986—three days after the Borough believed the court would automatically dismiss this case pursuant to Civil Rule 41(e) —the Borough filed a motion to *amend* the court's order of dismissal by adding a provision that would dissolve the preliminary injunction against the Borough. In this motion, the Borough did not explicitly make or preserve its defense of lack of

**13.** Alaska R.Civ.P. 4(h) states:

*Service of Process by Mail.* In addition to other methods of service provided for by this rule, process may also be served within this state or the United States or any of its possessions by registered or certified. mail upon an individual other than an infant or an incompetent person and upon a corporation, partnership, and unincorporated association. In such case, copies of the summons and complaint or other process shall be mailed by the clerk for restricted delivery only to the party to whom the summons or other process is directed or to the person authorized under federal regulation to receive his restricted delivery mail. All receipts shall be so addressed that they are returned to the party requesting the summons or process or his attorney. Proof of service shall be made by affidavit forthwith. Service of process by mail under

this paragraph is complete when the return receipt is signed.

**14.** The complaint and summons are in the appellate record, but they contain no notation or clerk's certification showing that they were mailed to the Borough.

**15.** Alaska R.Civ.P. 12(h) parallels this statutory language, stating:

A defense of lack of jurisdiction over the person, improper venue, insufficiency of process, or insufficiency of service of process is waived (A) if omitted from a motion in the circumstances described in subdivision (g) [entitled "Consolidation of Defenses in Motion"]; or (B) if it is neither made by motion under this rule nor included in a responsive pleading or an amendment thereof permitted by Rule 15(a) to be made as a matter of course.

personal jurisdiction.[16]  (3) On June 23, 1986, the Borough moved to dismiss the case on the ground that English Bay did not timely respond to the court's notice to show cause.  Again, the Borough did not explicitly preserve its defense of lack of personal jurisdiction.

English Bay also argues that the Borough made a voluntary appearance pursuant to AS 09.05.010 on July 30, 1984, when the Borough attorney signed a stipulation in the 1982 foreclosure action, 3KN–82–302 Civil, that refers to this present action by name.  The majority makes reference to this stipulation as being a relevant fact, but does not further embellish on its significance.[17]  However, since the superior court's rulings on these post decree motions were influenced in part by this stipulation which shows "the Borough's awareness" of this pending action, I now address these arguments.

The term "appearance" in AS 09.05.010 refers to personal jurisdiction: the voluntary appearance operates as a substitute for service of process so as to confer personal jurisdiction over the defendant. Many of the cases relied upon by English Bay and the majority involve situations in which the *party had been served with process* but had not answered.[18]  In our case, the defendant Borough was never properly served.  Since service of process or a voluntary appearance represent the formal initiation of a lawsuit, courts have adopted bright line rules governing these procedures.  For example, for service on a public corporation, Alaska Civil Rule 4(d)(9) requires service on the chief executive officer or chief clerk or secretary.  These special rules were adopted to prevent precisely the type of mishaps presented in this case.

State courts in other jurisdictions have rejected the idea that an agreement or stipulation extending time to plead or to answer constitutes an appearance for purposes of personal jurisdiction.  *See generally* Annotation, *Stipulation Extending Time to Answer or Otherwise Proceed as a Waiver of Objection to Jurisdiction for Lack of Personal Service: State Cases,* 77 A.L.R.3d 841, 853–59 (1977 & Supp.1987); Annotation, *Appearance to Make Application for Extension of Time or Continuance, or Order in that Regard, as Waiver of Objection to Jurisdiction for Lack of Personal Service,* 81 A.L.R. 166, 169

---

**16.** On the other hand, why did the Borough even need to preserve its defense of lack of personal jurisdiction?  This motion for post dismissal relief was confined to a singular and limited issue, namely the dissolving of a preliminary injunction.  This kind of motion could best be described as a "clean up or clarification request" as to the scope of the order of dismissal issued pursuant to Civil Rule 41(e).  All of the other questions of law that concerned the parties had disappeared and become moot by judicial order of dismissal which ended the lawsuit.  Thus, the Borough was not required to preserve its defense of lack of personal jurisdiction because this lawsuit had not yet procedurally been resurrected from the dead.  Procedurally, this lawsuit could only have been revived either by (1) the filing of a motion for reinstatement of the case by the court, which if granted would require that the court enter another order vacating the dismissal for good cause shown, or (2) the filing of a brand new lawsuit with a new complaint and a summons issued by the clerk of court accompanied by proper service on the Borough as required by Civil Rule 4(d)(6) and (9).

**17.** The majority opinion states: "In any case by July 27, 1984, Boedeker knew a complaint had been filed and that an answer was due."  This statement is simply incorrect.  Boedeker denied that the complaint he received showed it was ever filed with the clerk of court *before* it was mailed to him.  Thus, on this date or any time thereafter, until June 16, 1986, the Borough *never* had been properly or legally served the summons and complaint pursuant to the Civil Rules.  No personal jurisdiction ever attached over the Borough in the interim.  Neither a formal answer nor any other responsive pleading was due or required.  Boedeker's awareness did not obligate him to answer a complaint against the Borough which had never been validly served on its chief executive officer, chief clerk or secretary thereof.

**18.** *Lutomski v. Panther Valley Coin Exchange,* 653 F.2d 270, 270 (6th Cir.1981); *Turner v. Salvatierra,* 580 F.2d 199, 200 (5th Cir.1978); *Charlton L. Davis & Co. v. Fedder Data Center, Inc.,* 556 F.2d 308, 310 (5th Cir.1977); *Heleasco Seventeen, Inc. v. Drake,* 102 F.R.D. 909, 910 (D.Del. 1984); *Segars v. Hagerman,* 99 F.R.D. 274, 275 (N.D.Miss.1983); *United States v. Manos,* 56 F.R.D. 655, 659 (S.D.Ohio 1972); *Dalminter, Inc. v. Jessie Edwards, Inc.,* 27 F.R.D. 491, 491 (S.D. Tex.1961); *Gazin v. Hoy,* 730 P.2d 436, 437 (Nev. 1986); *Simonson v. Sittner,* 82 N.W.2d 78, 78 (N.D.1957); *Peterson v. McMillan,* 70 S.D. 56, 14 N.W.2d 97, 97 (1944).

(1932). Most courts conclude that such a stipulation is insufficient evidence of a party's intent to submit to the jurisdiction of the court.[19] As the California Supreme Court stated in *Busching v. Superior Court,* 12 Cal.3d 44, 115 Cal.Rptr. 241, 524 P.2d 369, 373 (1974):

> A party who merely seeks an extension of time to plead cannot reasonably be deemed to make a general appearance. His purpose may be to obtain adequate time to determine whether or not to object to the jurisdiction of the court.

(Citations omitted).[20] In construing a statute similar to AS 09.05.010, the Oregon Supreme Court held that an unfiled oral stipulation extending time for the defendant to answer did not constitute an appearance. *Thoenes v. Tatro,* 270 Or. 775, 529 P.2d 912, 917 (1974). The court in *Thoenes* noted:

> [I]n the absence of an estoppel *the jurisdiction of the court should not be held to attach for any purpose until the defendant has in some way used the machinery of the court to serve his ends.* A motion for an extension of time would, of course, constitute such use. And a stipulation between the parties for an extension of time, if filed with the court, could be deemed a use of the court's processes.

(Footnotes omitted; emphasis added). *See also Charette v. Eisenbraun,* 274 Or. 491, 547 P.2d 612, 613 (1976); *State ex rel. Karr v. Shorey,* 30 Or.App. 137, 567 P.2d 118, 121 (1977).

In this case the Borough entered into a stipulation with English Bay extending the redemption period for certain property foreclosed upon by the Borough as long as surety bonds were posted. The stipulation was filed with the court under the case heading "In Re Kenai Peninsula Borough 1982 Foreclosure Proceeding on Properties for the Real Property Taxes Delinquent for the Tax Year of 1981 (Civil Action No. 3KN–82–302 CI)." In addition, the stipulation stated "[t]hat for and in consideration of the extension of the redemption period stated above, it is hereby agreed that a Stipulation will be executed and filed in the action styled *English Bay Corporation v. Kenai Peninsula Borough,* case no. 3KN 84–563CJ, allowing the Kenai Borough a similar extension of time until the 30th day of August, 1984, to answer the pleadings on file therein." This stipulation was never executed. Since the existing stipulation was filed in another matter and only referred to a future stipulation, it cannot be regarded as submission to the court's jurisdiction in this case.

While the stipulation arguably indicates the Borough was aware of the present action, such awareness is irrelevant to whether the court had personal jurisdiction over the Borough.[21] When a court can legally obtain personal jurisdiction over a defendant, it does so either when process is properly served—an affirmative act of the court to establish its power over the defendant—or when the putative defendant

---

**19.** *See Busching v. Superior Court,* 12 Cal.3d 44, 115 Cal.Rptr. 241, 524 P.2d 369, 373 (1974); *Holtkamp v. States Marine Corp.,* 165 Cal.App.2d 131, 331 P.2d 679, 681–82 (1958); *Paulson v. Faas,* 171 So.2d 9 (Fla.App.1965); *Higgins v. Beckwith,* 14 S.W. 931 (Mo.1890); *Rando v. Impresa Navigazione Commercialle S.A.,* 9 Misc.2d 576, 173 N.Y.S.2d 375 (1957); *Aloisi v. Deaton,* 34 Misc.2d 116, 226 N.Y.S.2d 176 (1962); *Maushart v. Kelly,* 10 A.D.2d 630, 196 N.Y.S.2d 935 (1960); *Templeman v. Hester,* 65 Ohio App. 62, 29 N.E.2d 216 (1940); *Thoenes v. Tatro,* 270 Or. 775, 529 P.2d 912, 917 (1974); *Charette v. Eisenbraun,* 274 Or. 491, 547 P.2d 612, 613 (1976); *State ex rel. Karr v. Shorey,* 30 Or.App. 137, 567 P.2d 118, 121 (1977); *Tierney v. Bulletin Co.,* 19 Pa.D & C2d 81 (1958); *Klatte v. McKeand,* 78 S.E. 712 (S.C.1913); *Simpson v. East T., V. & G. R. Co.,* 89 Tenn. 304, 15 S.W. 735 (1890). *Contra* Annotation, 77 A.L.R.3d at 847–53; Annotation, 81 A.L.R. at 166–69.

**20.** *See also Benny v. Pipes,* 799 F.2d 489, 493 (9th Cir.1986) ("[g]enerally, a motion to extend time to respond gives no hint that the answer will waive all jurisdictional defects, and is probably best viewed as a holding maneuver while counsel consider how to proceed.").

**21.** The superior court incorrectly based its denial of the Borough's motion to set aside the judgment in part on the Borough's awareness of this action. The court stated:

> The Borough was aware of this suit apart from the service of the Summons and Complaint. This awareness is shown by the stipulation filed in the lien foreclosure case for extension of time to answer this suit.

makes a voluntary appearance or otherwise affirmatively submits to jurisdiction. Mere awareness is too nebulous a concept to constitute a suitable test for personal jurisdiction.[22]

I agree with the majority that the Borough's June 16, 1986, motion to the court constituted a voluntary appearance which, pursuant to AS 09.05.010, is equivalent to personal service. In making that motion, the Borough recognized that the case had not been dismissed pursuant to Civil Rule 41(e), and argued that it should be. The June 16 motion was a deliberate submission to the court's power.

However, while the court had jurisdiction over the Borough on June 16, it erred in granting default judgment to English Bay because the court did not have before it a valid entry of default.[23] First, English Bay never served notice of entry of default on the Borough as required by Civil Rule 55(a)(2). Second, the entry of default on November 24, 1984, was invalid since the court did not have jurisdiction over the Borough. Third, no default had yet occurred as of June 16, 1986, and English Bay's application for entry of default and for a default judgment was not ripe for any judicial decision on the merits.

The majority holds that taking a default judgment without notice of default under Civil Rule 55(c)(1) should not ordinarily be regarded as rendering the underlying judgment void. However, the treatise cited by the court for this proposition also cites several federal cases in which failure to give notice *combined with other procedural irregularities* was held sufficient to vacate the judgment.[24] In light of all the procedural irregularities in this case,[25] failure to give notice of the application for default should be grounds to hold the judgment void.

The majority view states that "the dissent's conclusion that there was no valid application for a default is dubious." To the contrary, it is the majority that reaches the illogical conclusion that the June 16,

**22.** The superior court also based its decision partly on the Borough's failure to file a Civil Rule 12(b) motion challenging personal jurisdiction prior to making a voluntary appearance in June of 1986. The court believed that by not filing such a motion the Borough waived the defense of lack of jurisdiction. I disagree.

Prior to the time a putative defendant receives proper service of process or makes a voluntary appearance, the defendant has no obligation to file a motion challenging jurisdiction, or to do anything, because the court has not yet acquired personal jurisdiction over him or her. Under the analogous federal rule, "until a defendant is properly served with original process he has no duty to answer or make other motions." 2 J. Moore & J. Lucas, *supra*, ¶ 4.09 at 4–119. The same holds true under the Alaska civil rules.

**23.** I disagree with the majority that the Borough did not satisfactorily raise the issue that the entry of default was invalid for lack of service. In its motion to set aside the default judgment, the Borough argued

A judgment is void if a court that rendered it lacked personal jurisdiction over the defendant. As discussed above, under meritorious defenses, since Defendant did not, and never has, received service of process in this case, there is no personal jurisdiction over Defendant, and therefore the default judgment is void.

This argument necessarily includes the contention that the court lacked personal jurisdiction over the defendant at the time of entry of default as well as when the court entered the judgment. The fact that the court gained personal jurisdiction through an appearance before entry of the judgment does not void the Borough's underlying argument that the court lacked personal jurisdiction before that time because of lack of service.

**24.** The majority argues that the Borough failed to raise the issue that the judgment was void on the grounds it involved a plain usurpation of power. The Borough clearly argued on appeal that the judgment was void under Rule 60(b)(4). Put simply, usurpation or not, a void judgment is a void judgment. *See* 6 J. Moore & J. Lucas, *supra*, ¶ 55.05[3], at 55–30 n. 18 (citing *Winfield Assoc. Inc. v. Stonecipher*, 429 F.2d 1087, 1091 (10th Cir.1970)), ¶ 55.09, at 55–49 (citing *Bass v. Hoagland*, 172 F.2d 205 (5th Cir.), *cert. denied*, 338 U.S. 816, 70 S.Ct. 57, 94 L.Ed. 494 (1949)).

**25.** The record shows lack of personal jurisdiction upon entry of default by the clerk, lack of notice upon entry of default by the clerk (Alaska R.Civ.P. 55(a)(1)) (assuming personal jurisdiction existed), failure to give notice of the application for default judgment (Alaska R.Civ.P. 55(c)(1)), failure to dismiss the case for lack of prosecution pursuant to the court's order and Rule 41(e), and the unauthorized consideration of a premature request for a default judgment when in fact no default had ever occurred, if the provisions of AS 09.05.010 and the Alaska Rules of Civil Procedure are analyzed properly.

1986, appearance resurrects or cures the invalid November 13, 1984, application for entry of default. This conclusion is farcical because under Civil Rule 12(a) a default did not even exist until twenty days after the Borough appeared and failed to answer the summons and complaint. An application for entry of default cannot be valid on June 23 when the default itself could not have occurred until July. *See* Alaska R.Civ.P. 55(a). Alaska Statute 09.05.010 specifically states that *an appearance "is equivalent* to personal service of a copy of the summons and complaint upon the defendant." (Emphasis added). What then does the word "equivalent" mean? According to *Webster's New World Dictionary, Second College Edition,* it means equal in meaning, power, substance and value. Therefore, this lawsuit must pro-

ceed under the normal operation and requirements of the civil rules.[26] By appearing, the defendant does not consent to the validity of proper service of all previously filed motions and orders.[27]

Thus, the majority reaches the impossible conclusion that when the trial court granted the default judgment on July 22, 1986, it had before it a valid application for entry of default as well as for a default judgment.[28]

Even assuming that the entry of default was defective, the majority concludes that the trial court did not err in entering a default judgment without first entering a default. The court cites a number of federal authorities for the proposition that entry of default is largely a formality. These cases are clearly inapplicable to our rule.

**26.** Timetable and sequence for normal operation of the Alaska Rules of Civil Procedure after Borough's entry of appearance under AS 09.05.010:

(1) The Borough's first appearance on June 16, 1986 meant it had 20 days to file an answer and raise its affirmative defenses, including lack of personal jurisdiction, which can be preserved by motion *or* a responsive pleading, such as an answer. Alaska R.Civ.P. 12(H)(1)(A)(B).

(2) The Borough had until July 8, 1986 before an answer would be due. No default was possible on June 16 or 23 because none had yet occurred. All of English Bay's applications for entry of default or a default judgment prior to July 8, 1986 were premature, not ripe, and simply a nullity. Nothing in the Alaska Rules of Civil Procedure authorizes premature filings for a default judgment and the majority cites no authority for such a practice, nor any reason for allowing such an irregularity to occur in this case.

(3) July 9, 1986 was the earliest day that English Bay was authorized to apply for an entry of default. Since the Borough appeared on June 16, Civil Rule 55(a)(2) applied, and the clerk of court was forbidden to enter a default not less than three days following service. There is no dispute that English Bay served all pleadings by mail such that an additional three days would be counted before the clerk could enter a default for failure of the Borough to answer. *See* Alaska R.Civ.P. 6(A), (C). Thus, July 14, 1986, was the earliest date the clerk of court could have legitimately entered a default (not a default judgment).

(4) Next, on July 15, 1986, if the Borough still had not answered, then English Bay would now be authorized to file a motion for the entry of a default judgment based upon the

pleadings. Civil Rule 77(c)(4) controls here and requires that the Borough be allowed 15 days, plus three more days, due to mail service, before opposition to the motion must be filed. This date would be August 4, 1986. English Bay would have three days to reply, plus three more days due to mail service which would be August 11, 1986.

Since the parties requested oral argument, and this was a motion for a judgment on the pleadings, the superior court had no option or discretion except to schedule a·hearing on this matter not less than 10 days nor more than 20 days from the date of the filing of the notice for oral argument. The latest date this hearing could have been scheduled in compliance with the Alaska Rules of Civil Procedure was September 4, 1986.

**27.** *See* 5 Am.Jur.2d, *Appearance* § 30, at 504 (1962) ("an appearance [in proceedings after judgment] does not confer jurisdiction or give validity to the judgment, and that although a party is bound to any order of the court made after his general appearance, it does not bind him to orders or judgments made without jurisdiction before his appearance.")

**28.** Even if the application for a default judgment was erroneously considered revived by the superior court as of the June 23 appearance, it would still be similarly invalid since the default could not have occurred until at least July 21.

Indeed, under Civil Rule 55(a)(2) the clerk could not have entered default against the Borough until at least three days after the application of default, or on July 24.

Thus, the superior court's actual entry of a default judgment on July 22, 1986 was premature and erroneously entered.

Unlike the federal rule, Alaska Civil Rule 55(c)(2) contains the following sentence: "When application is made to the court for a default judgment, counsel shall file a memorandum of the default, showing when and against what parties it was entered...." I interpret this sentence as providing that, in Alaska state courts, (1) a valid entry of default *must* precede a default judgment by the court, and (2) a litigant cannot apply for a default judgment prior to the time that the opposing party has committed the default.

Both of these requirements were violated in this case. First, the court issued the default judgment without a prior valid entry of default. Second, since the court first obtained personal jurisdiction over the Borough on June 16, 1986, when the Borough made a voluntary appearance, the Borough could not have committed any default until twenty days later, in July. *See* Alaska R.Civ.P. 12(a). English Bay never subsequently applied for a default or a default judgment. Nor did they serve notice of such applications on the Borough. Since no default had yet occurred, English Bay's earlier applications were nullities.

I would therefore conclude that the superior court plainly usurped its power by issuing a default judgment in the absence of a prior valid entry of default, without valid applications for entry of a default or a default judgment, and in direct violation of AS 09.05.010. *Cf. SEC v. Seaboard Corp.,* 666 F.2d 414, 415, 417 (9th Cir.1982) (default judgment which the court entered for refusal to pay discovery sanction was punitive, not "founded on an exercise of the court's inherent power," and void); *Compton v. Alton S.S. Co.,* 608 F.2d 96, 106 (4th Cir.1979) (default judgment resulting from erroneous application of statute was void). Under these circumstances, the default judgment against the Borough is void. Therefore, the court should have set it aside under Civil Rule 60(b)(4).

### III.

Alternatively, I would reverse the trial court's judgment and set aside the default judgment on the grounds that the trial court abused its discretion in not invoking Civil Rule 94 to allow a trial on the merits. Civil Rule 94 provides:

These rules are designed to facilitate business and advance justice. They may be relaxed or dispensed with by the court in any case where it shall be manifest to the court that a strict adherence to them will work an injustice.

This case begs for relief under this rule. Through a veritable extravaganza of procedural snafus and foul-ups, important issues of public policy involving taxation of native lands and the constitutionality of state foreclosure notice statutes were decided on no more than the mere allegations in English Bay's complaint filed some five years ago. Basic fairness and proper adherence to the requirements of the Alaska Rules of Civil Procedure were ignored or disregarded. These errors were not limited to the parties; they were compounded and exacerbated by the trial court and the clerk of court as well. A state statute providing for notice in foreclosure proceedings was held unconstitutional without the superior court informing the Attorney General of Alaska as required by Civil Rule 24. The superior court failed to follow its own order and dismiss the case for lack of prosecution after the thirty-three day period had run. The superior court erred in entering a default judgment in the absence of a valid entry of default by the clerk of court. When the Borough actually did appear on June 16, 1986, pursuant to AS 09.05.010, but before the Borough was required to answer, the superior court granted English Bay's premature motion for a default judgment without permitting a mandatory hearing of oral argument by either party.

Looking at the record as a whole, I perceive mass confusion among the parties— confusion substantially caused in part by the superior court's failure to abide by the plain wording of its own Notice and Order of Dismissal pursuant to Civil Rule 41(e).

Second, I have identified at least three serious errors of the superior court that go beyond mere misinterpretations of law. First, the court held a state statute unconstitutional without first notifying the attor-

ney general. Second, the court issued a default judgment without a prior entry of default and without valid applications for default and default judgment. Third, the superior court failed to comply with the procedural mandate of AS 09.05.010 and the corresponding Civil Rules 4(d)(4); 5(a); 6(a), (c); 12(a); 12(h)(1)(B); 55(a)(2); 77(c)(4)(d), (e), and (f). In fact, the superior court offers no reasons at all for disregarding the proper application of the aforementioned rules of civil procedure. If this kind of action by the superior court is not a usurpation of power, then what is?

Third, I note that English Bay would suffer no prejudice from setting aside the default judgment.[29] The record does not show that any discovery has occurred or that any evidence has been presented. Little time or money would have been wasted.

Fourth, while I usually respect the finality of judgments, to let this default judgment stand is to render meaningless at least one, if not three, earlier final judgments obtained by the Borough that were never appealed.[30]

Fifth, the claims raised by English Bay involve serious questions of federal and state law. One such question is whether state statutory foreclosure notice requirements, as applied to a remote village corporation such as English Bay, are consistent with the due process clauses of the federal and state constitutions. Another is under what circumstances village corporation lands are subject to local real property taxes.

Finally, after examining the record and the Borough's brief, I am persuaded that its defenses of res judicata and proper taxation on the merits are meritorious. We have stated: "The meritorious defense requirement demands 'something more than a perfunctory statement that a meritorious defense exists. The defaulting party may be required to demonstrate ... that there is a factual or legal basis for the tendered defense.'" *Hertz,* 704 P.2d at 772 (quoting 6 J. Moore, *supra,* ¶ 55.10(1) at 53 n. 14 (2d ed. 1983). This the Borough has done. I am convinced that directing the superior court to reopen the proceedings will not be a waste of time or judicial resources. However, I do not imply that those defenses will ultimately prevail, which of course would be determined by the superior court upon remand.

### IV.

In conclusion, I would reverse the court on two alternative grounds: (1) the default judgment was void under Civil Rule 60(b)(4), since the superior court plainly usurped its power by issuing a default judgment in the absence of a prior valid entry of default due to lack of personal jurisdiction over the Borough, and because no valid application for entry of a default, or a default judgment, was ever made by English Bay pursuant to Alaska Rules of

---

**29.** We have previously stated: "The mere fact that the nondefaulting party will be required to prove his case ... does not constitute prejudice which should prevent a reopening." *Hertz v. Berzanske,* 704 P.2d 767, 773 (Alaska 1985) (quoting *BDM v. Sageco, Inc.,* 57 Haw. 73, 549 P.2d 1147, 1150 (1976)).

**30.** Thus, this usually important consideration is absent in this case, where either affirming or reversing seem to be equally disrespectful of the finality of judgments.

The majority expresses its concern for the protection of the finality of judgments as a reason for not setting aside this default judgment. The majority justifies this approach on the technicality that points of appeal numbers 1, 2, and 3 are not being considered because any challenges on these law issues should have been taken by way of a timely appeal which the Borough failed to do.

In the ordinary case, I would agree with the majority's view on this point. However, the majority's holding cannot be reconciled on the basis of fairness and justice to all the parties here because the validity and finality of the Borough's three tax foreclosure judgments in 1982–84 are vacated and effectively set aside *sua sponte* by this court in favor of English Bay. How can this be allowed when English Bay never timely appealed those three judgments, nor properly preserved its defenses in those actions? How can the majority favor English Bay over the Kenai Borough under these circumstances? Or, stated another way, why is the Borough penalized for its technical failure to file a timely notice of appeal on these law issues, while English Bay is exempted from compliance with the rules of appellate and civil procedure and AS 09.05.010, so that the "sanctity" of its default judgment is upheld?

Civil Procedure after the Borough actually first appeared in this lawsuit on June 16, 1986, pursuant to AS 09.05.010; or (2) that the superior court clearly abused its discretion by not *sua sponte* applying Civil Rule 94 so as to relax the rules and correct the morass of procedural confusion prevalent throughout the proceedings in this case. I would reverse and remand to the superior court for a trial on the merits.