Erwin Nick HERTZ, Appellant,

v.

Lawrence W. BERZANSKE, Jr.; Adam F.
Pierce, By and Through his father and
next friend, Albert H. Pierce; Albert H.
Pierce and Joanne Pierce, Appellees.

No. S–371.

Supreme Court of Alaska.

Aug. 16, 1985.

James R. Webb, Faulkner, Banfield, Doogan & Holmes, Juneau, for appellant.

Douglas L. Gregg and Peter M. Page, Juneau, for appellees.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

BURKE, Justice.

On appeal is the final judgment in a personal injury suit filed against appellant Erwin Hertz. Hertz contends, among other things, that the superior court abused its discretion in refusing to set aside an entry of default against him. Because we agree, we need not decide most of the other arguments raised on appeal. In anticipation of an issue which may arise again on remand, however, we hold that the superior court properly awarded prejudgment interest on that part of its damage award for lost future earning capacity.

## BACKGROUND

On August 28, 1981, Erwin Hertz, Lawrence Berzanske, Jr., and Adam Pierce were involved in a truck-motorcycle collision in Haines, Alaska.[1] Within a week of the collision, Hertz's insurer, Providence Washington Insurance Company (Providence Washington), retained Wilton Adjusting Services (Wilton) to investigate and adjust the accident. Wilton assigned the case to its office manager, Ernie Dean, who began an active investigation of the claim shortly thereafter. In early September, Dean contacted the plaintiffs' attorney, Douglas Gregg, to discuss settlement of the claim.

Berzanske, Pierce and Pierce's parents filed a complaint against Hertz on November 30, 1981, alleging that Hertz's negligence was the proximate cause of the collision. Hertz was served in Haines on December 7, 1981. He notified Dean of the complaint the same day.

On December 23, 1981, Dean telephoned Gregg to obtain an extension of time in which to answer the complaint. The substance of the conversation between Dean and Gregg is sharply disputed. Dean claims he asked for and obtained an "open 20 day extension," meaning that the plaintiffs granted an open extension of the time to answer the complaint and would not seek entry of default except upon twenty days' notice to the defendant. Gregg contends Dean requested and obtained a twenty day extension of time in which to answer the complaint.

Following the telephone conversation, Gregg sent a letter to Dean reviewing their conversation, amplifying his clients' position, and discussing settlement possibilities.

1. Pierce was the owner-operator of the motorcycle, Berzanske was Pierce's passenger, and Hertz was driving the truck.

The letter pointed out the possible conflict between the insured and insurer in cases where potential liability exceeds amount of coverage, and recommended that Dean provide Hertz with counsel. The letter stated that Dean could have "an extension of 20 days in which to get an answer filed," established a specific due date for the answer, and noted that if serious progress toward a satisfactory resolution were being made, "the entry of an appearance is all that would be necessary to protect the defendant." Dean denies receiving the letter.

As of January 19, 1982, no answer had been filed on Hertz's behalf. Gregg obtained an entry of default for the plaintiffs the same day.[2] Gregg made no effort to notify Dean of his intent to obtain an entry of default. Neither Dean nor Hertz learned of the default until nearly one month after its entry. In the meantime, Gregg scheduled an evidentiary hearing for February 19, 1982, to establish proof of damages.

On February 18, 1982, Gregg filed a memorandum in support of default judgment. Dean telephoned Gregg the same day. He asked Gregg if he had any medical bills or reports, and indicated that Providence Washington was interested in settling the matter. Gregg responded that there had been an entry of default and that a hearing on damages was set for the next day. Dean claimed that this was the first time he learned of the entry of default. Providence Washington had not yet assigned counsel to the case.

The morning of the hearing, an attorney for Providence Washington contacted Gregg to request a continuance, but Gregg refused. Hertz appeared through counsel at the hearing and moved to set aside the default entry. He was represented by James Webb, who was retained by Providence Washington only one hour before the hearing. The superior court heard the motion to set aside the default entry, but proceeded with the hearing on damages, allowing Hertz's counsel to participate. This hearing was the primary basis for appellees' claim that setting aside the default entry would be prejudicial.

On February 25, 1982, an evidentiary hearing was held on the motion to set aside the entry of default. Gregg and Dean were the only witnesses. The thrust of Dean's testimony was that he believed he would be given twenty days' notice of the plaintiffs' intent to obtain an entry of default. Evidence submitted included the relevant portions of Dean's time log as well as Dean's "verbal communication records," allegedly contemporaneous records of his telephone calls. Gregg testified that a twenty day extension of time was all that had been requested and granted. He submitted several pieces of documentary evidence: the above-mentioned letter from Gregg to Dean, copies of telephone logs from Gregg's office, copies of telephone bills of Gregg's office and copies of notes, a time sheet, and a "time and money recap." Also introduced was a tape recording of the February 18, 1982, telephone conversation between Gregg and Dean, which Gregg claims to have been made inadvertently.

The superior court denied the motion to set aside the default entry. Favoring Gregg's version of the facts over Dean's, the court concluded there was no "good cause" to set aside the default entry, as required under Alaska Rule of Civil Procedure 55(e). The court notified the parties that it would allow Hertz a fuller opportunity to be heard on the question of damages, but that Hertz would not be entitled to make any argument concerning Pierce's and Berzanske's alleged negligence or the effect of such negligence on damages, on the ground that inquiry into issues relating to liability was foreclosed by the entry of default. Subsequently, the court denied Hertz's motion for leave to file a counter-

---

**2.** Without any extension, the answer would have been due on Monday, December 28, 1981. Alaska R.Civ.P. 12(a). With a twenty day extension it would have been due on Monday, January 18, 1982. Gregg's letter to Dean stated that the answer was due, under the extension, on Friday, January 15, 1982.

claim to enforce his alleged right to contribution from Adam Pierce, for Berzanske's damages.

After the damages hearing was held, the court awarded the plaintiffs $436,319.43, which included costs, attorneys fees, and prejudgment interest. Hertz filed a motion for a new trial, the motion was denied, and this appeal followed.[3] Hertz contends that the superior court both applied an incorrect legal standard in deciding his motion to set aside the default entry and abused its discretion in refusing to set aside the default entry. We agree.

### RULE 55(e)

The standard applicable to setting aside an entry of default is set forth in Alaska Rule of Civil Procedure 55(e):

> For good cause shown the court may set aside an entry of default and, if a default judgment has been entered, may likewise set it aside in accordance with Rule 60(b).

Hertz submits that the superior court misapplied the "good cause" requirement of Rule 55(e) by applying the Rule 60(b) standard,[4] instead of the "good cause" standard, and by interpreting "good cause" to require a good excuse or justification.

Hertz maintains that Rule 55(e) establishes a different, more lenient standard for setting aside an entry of default than for setting aside a default judgment. The superior court held that while there is a proper distinction between the two standards, the distinction applies principally to the time limit within which a motion for relief can be made.

The difference between the standard for setting aside a default entry and a default judgment has never been addressed by this court. Since Rules 55(e) and 60(b) are identical to their federal counterparts, Rules 55(c) and 60(b), we look to federal case law for guidance.

The majority view expressed in federal cases and by commentators is that the "good cause" standard for setting aside a default entry is more flexible and lenient than the Rule 60(b) standard for setting aside a default judgment. 6 J. Moore, *Moore's Federal Practice* ¶ 55.10[1] and [2] (2d ed. 1983); 10 C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2692 (1983). The "good cause" standard "frees a court considering a motion to set aside a default entry from the restraints of Rule 60(b) and entrusts the determination to the discretion of the court." 10 Wright, Miller & Kane, *supra*, § 2694, at 493. *See Meehan v. Snow*, 652 F.2d 274, 276 (2d Cir.1981); *Broder v. Charles Pfizer & Co.*, 54 F.R.D. 583 (S.D.N.Y.1971). While in practice federal courts consider many of the same factors when deciding whether to grant relief from default judgment or from entry of default, they evaluate and weigh the factors more liberally in the case of a default entry. 6 J. Moore, *Moore's Federal Practice* ¶ 55.10[1] (2d ed. 1983); 10 Wright, Miller & Kane, *supra*, § 2692.

■ We agree that granting the superior court greater flexibility to set aside default entries is a sensible practice. The default entry is simply an interlocutory order that in itself determines no rights or remedies, whereas the default judgment is a final judgment that terminates the litigation and decides the dispute. Setting aside a final

---

**3.** The claim by Lawrence W. Berzanske was later settled, and he has been dismissed from this appeal.

**4.** Alaska R.Civ.P. 60(b) provides in part:
   On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons:
   (1) mistake, inadvertence, surprise or excusable neglect;
   (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b);

(3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party;
   (4) the judgment is void;
   (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or
   (6) any other reason justifying relief from the operation of the judgment.

judgment may be more disruptive to the judicial process and to the parties, who may have relied thereon, than setting aside an interlocutory order. In addition, a default judgment typically involves a much greater commitment of judicial resources, because recovery determinations, complicated hearings and jury trials often take place. 10 C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2692 (1983).

■ The superior court held that to establish "good cause," the movant must show there exists a good excuse, or justification, as well as a meritorious defense. It is undisputed that a meritorious defense is a prerequisite to setting aside an entry of default.[5] Hertz argues, however, that once a meritorious defense has been shown, the court should inquire only into whether there are any intervening equities which require that the entry of default stand.

While some states have embraced the superior court's rule,[6] we prefer the approach taken by the Third Circuit, which considers the following three factors when ruling on motions to set aside default entries and default judgments: 1) whether the plaintiff will be prejudiced; 2) whether the defendant has a meritorious defense; and 3) whether culpable conduct of the defendant led to the default (whether he acted willfully or in bad faith). The Third Circuit notes that "[l]ess substantial grounds may be adequate for setting aside a default [entry] than would be required for opening a default judgment." *Felici-*

*ano v. Reliant Tooling Co.*, 691 F.2d 653, 656 (3d Cir.1982); *Farnese v. Bagnasco,* 687 F.2d 761, 764 (3d Cir.1982).[7]

We conclude that whether "good cause" exists to set aside an entry of default does not depend on a showing of "excusable neglect" or some other excuse or justification, as is required to set aside a default judgment. Instead, "good cause" is a question of equity, left to the discretion of the trial court upon the showing of a meritorious defense.

■ In exercising its discretion to set aside an entry of default, a court should consider the following factors: whether the defendant has established the required meritorious defense, prejudice to plaintiffs, the culpability of defendant's conduct, the length of the period of default, the size of any potential award to plaintiffs, and alternative sanctions against the defendant. *See Gregor v. Hodges*, 612 P.2d 1008, 1009–1010 (Alaska 1980); *Hill v. Vetter*, 525 P.2d 529, 531 (Alaska 1974). The court should also consider whether the parties had prior contact such that the plaintiff should have given defendant notice that a default would be sought. *City of Valdez v. Salomon*, 637 P.2d 298, 299 (Alaska 1981); *Cook v. Aurora Motors, Inc.*, 503 P.2d 1046, 1049 n. 6 (Alaska 1972). Disposition of a case on its merits is strongly favored. *Gregor*, 612 P.2d at 1010.

## MERITORIOUS DEFENSE

The superior court found that Hertz showed a meritorious defense of compara-

---

**5.** We have previously held that a default judgment will not be set aside, except in very unusual cases, unless the defendant has presented a meritorious defense. *Gregor v. Hodges*, 612 P.2d 1008, 1009–1010 (Alaska 1980); *Balchen v. Balchen*, 566 P.2d 1324, 1328 n. 11 (Alaska 1977); *Markland v. City of Fairbanks*, 513 P.2d 658, 659–660 (Alaska 1973). A meritorious defense is similarly required for setting aside an entry of default. *See* 6 J. Moore, Moore's Federal Practice ¶ 55.10[1] (2d ed. 1983); 10 C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 2697 (1983).

**6.** *BDM, Inc. v. Sageco, Inc.*, 57 Haw. 73, 549 P.2d 1147, 1149–1150 (1976); *McClurg v. Flathead County Comm'rs*, 188 Mont. 20, 610 P.2d 1153, 1155–1156 (1980); *Intermountain Lumber &*

*Builders Supply v. Glens Falls Ins. Co.*, 83 Nev. 126, 424 P.2d 884 (1967).

**7.** For other. federal courts using a similar approach, *see Meehan v. Snow*, 652 F.2d 274, 276 (2d Cir.1981); *Jackson v. Beech*, 636 F.2d 831, 835 (D.C.Cir.1980); *Bavouset v. Shaws of San Francisco*, 43 F.R.D. 296, 297–298 (S.D.Tex. 1967). *See also* 6 J. Moore, Moore's Federal Practice ¶ 55.10[2] (2d ed. 1983); 10 C. Wright, A. Miller & M. Kane, Federal Practice and Procedure, § 2696 at 518–19 (1983). *See generally* Project, *Relief From Default Judgments Under Rule 60(b)—A Study Of Federal Case Law*, 49 Fordham L.Rev. 956 (1980–81) (proposing that the rules regarding set aside motions be modified to provide greater consistency and predictability).

772

tive negligence. The appellees argue that, equities notwithstanding, the motion to set aside default was denied correctly because Hertz has no meritorious defense.

■ The meritorious defense requirement demands "something more than a perfunctory statement that a meritorious defense exists. The defaulting party may be required to demonstrate ... that there is a factual or legal basis for the tendered defense." 6 J. Moore, *Moore's Federal Practice* ¶ 55.10[1] at n. 14 (2d ed. 1983). *See Corso v. Commissioner of Education*, 563 P.2d 246, 248 (Alaska 1977). It demands a showing that "if relief is granted the outcome of the suit may be different than if the entry of default or the default judgment is allowed to stand...." 10 C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2697 (1983). While in some jurisdictions, a meritorious defense must be one which would "defeat plaintiff's action," *Horn v. Intelectron Corp.*, 294 F.Supp. 1153, 1156 (S.D.N.Y. 1968), we interpret "different outcome" more broadly. Although the existence of a comparative negligence defense might not result in a different prevailing party, it could reduce a plaintiff's award, and thereby alter the outcome of the suit.

■ Hertz adduced testimony showing that he could produce evidence at trial that Berzanske and Pierce were traveling substantially in excess of the speed limit at the time of the collision, that the rear tire of Pierce's motorcycle was bald and that the motorcycle was being operated in a negligent manner other than by speeding. The superior court concluded, and we agree, that such evidence could well support a finding by the trier of fact that Pierce and Berzanske (or at least Pierce) were partly at fault and, therefore, not entitled to full recovery under the doctrine of comparative negligence. *Kaatz v. State*, 540 P.2d 1037, 1049 (Alaska 1975). *See also State v. Kaatz*, 572 P.2d 775 (Alaska 1977). A meritorious defense was thus shown.

ABUSE OF DISCRETION

The superior court denied Hertz's motion to set aside the default entry primarily because of the lack of a good excuse or justification for the default. But it found in addition that there were two intervening equities operating against Hertz. First, Dean was substantially untruthful, and offered evidence that had been substantially fabricated. Second, the plaintiffs would be prejudiced if the motion to set aside default were granted, because they had already submitted a memorandum regarding damages and had adduced testimony from several witnesses concerning damages. The size of the potential award was considered, but the superior court believed the other factors were more compelling, and noted that Hertz would be able to participate in the damage hearing.

■ We disagree with the superior court's assessment of the equities in this case. Gregg obtained a default entry against Hertz only one day after the deadline for filing his answer. While Gregg did send a letter to Dean advising him of the twenty day extension, he made no effort to notify Dean of his intent thereafter to seek a default, or to inquire about Dean's intention to proceed. We have adopted the following rule of trial conduct:

> When [a lawyer] knows the identity of a lawyer representing an opposing party, he should not take advantage of the lawyer by causing any default or dismissal to be entered without first inquiring about the opposing lawyer's intention to proceed.

American College of Trial Lawyers Code of Trial Conduct No. 14(a), at 149 (1971–72); *City of Valdez v. Salomon*, 637 P.2d 298, 299 (Alaska 1981); *Cook v. Aurora Motors, Inc.*, 503 P.2d 1046, 1049 n. 6 (Alaska 1972). The same rule of inquiry should apply when a lawyer knows the identity of an *agent* representing an opposing party, even if he does not know the identity of opposing counsel. "[T]he purpose of the default procedure is to prevent a procrastinating defendant from unduly delaying a case; it should not be regarded as a tactical tool by

which a plaintiff may obtain judgment without the bother and expense of litigation." *City of Valdez*, 637 P.2d at 299, n. 1. While Gregg had the procedural right to seek a default entry, he was obligated to inquire into Hertz's intent to proceed and to inform Hertz of his intent to seek a default entry.

The plaintiffs originally prayed for damages "in excess of" $45,000, but they received $436,319.43. Unless there are intervening equities, a controversy concerning damages of this magnitude should be resolved on its merits whenever possible. *Gregor v. Hodges*, 612 P.2d 1008, 1010 (Alaska 1980). The superior court attempted to minimize the harshness of the magnitude of the award by noting that Hertz had the opportunity to participate in the determination of damages. Such an opportunity, however, is relatively meaningless once the determination of liability has been made.

The superior court was preoccupied with Dean's untruthfulness regarding the reasons for the default. We have no reason to doubt the court's estimation of Dean's credibility. However, plaintiffs do not argue, and nothing suggests, that Dean acted in bad faith or intentionally by allowing the default to occur. Instead, it seems that Dean was later untruthful in order to dispel his own negligence. While we do not condone Dean's conduct,[8] his conduct, in itself, does not prevent a finding of good cause for setting aside an entry of default.

We also disagree with the superior court's conclusion that the appellees would be prejudiced if the motion to set aside the default entry were granted. Appellees claim they would be prejudiced because they had already submitted their memorandum on damages when Hertz moved to set aside the default, and had appeared at the hearing on damages with out-of-town witnesses whose testimony could have been delayed only at substantial inconvenience.

We fail to see any prejudice to appellees resulting from setting aside the default entry. The information appellees presented in their memorandum on damages was discoverable. The costs of witnesses and attorney's fees could have been reimbursed by Hertz as a condition to setting aside the default, using the court's equitable powers. *Gregor v. Hodges*, 612 P.2d 1008, 1009-1010 (Alaska 1980). "The mere fact that the nondefaulting party will be required to prove his case without the inhibiting effect of the default upon the defaulting party does not constitute prejudice which should prevent a reopening." *BDM, Inc. v. Sageco, Inc.*, 57 Haw. 73, 549 P.2d 1147, 1150 (1976); *Montez v. Tonkawa Village Apartments*, 215 Kan. 59, 523 P.2d 351 (1974).

In sum, we find no equitable reason why the entry of default should not have been set aside, given the short period of default, the amount of the potential award, the availability of alternative equitable sanctions, and strong policy favoring resolution of cases on their merits. We hold for the foregoing reasons that there was "good cause" under Civil Rule 55(e) to set aside the default entry and that the superior court abused its discretion in refusing to set it aside.

REVERSED in part, AFFIRMED in part, and REMANDED for further proceedings consistent with this opinion.[9]

---

8. The superior court is not foreclosed from sanctioning Hertz for violation of any court rules and orders. Alaska R.Civ.P. 90 and 95.

9. In the event of a new trial, the amount of the damage award to plaintiffs, if any, should also be redetermined. We need not address Hertz's contention that the superior court abused its discretion by refusing to permit him to file a counterclaim for contribution, because Hertz conceded that the issue is now moot. Hertz's contention that the superior court erred in failing to limit plaintiffs' recovery to $15,000 per plaintiff need not be addressed in light of our reversal and remand of the case. Finally, Hertz maintained on appeal that the superior court erred by awarding prejudgment interest on Pierce's damage award for lost future earning capacity. We wish to state at this time that the superior court's award was proper under *State v. Phillips*, 470 P.2d 266 (Alaska 1970).