**Stephen L. COX, Plaintiff,**

v.

**John A. NASCHE, et al., Defendants.**

**In re Jane DOE and Richard Roe.**

**No. F92–0019 Civil.**

United States District Court,
D. Alaska.

May 26, 1993.

**AMENDED ORDER**

SINGLETON, District Judge.

*PROCEEDINGS*

This is an action for defamation. Jurisdiction is based upon diversity of citizenship. 28 U.S.C. § 1332.

The specific matter before the Court is the question of whether Jane Doe, Esq., ("Doe"), and Richard Roe, Esq., ("Roe"),[1] plaintiff's

attorneys, should be required to pay defendants' attorney's fees incurred in setting aside entry of default and resisting entry of a default judgment. Requiring Doe and Roe to pay fees would act as a sanction against them for engaging in, "unnecessary motions or unwarranted opposition to motions." Local General Rule 36(D). I conclude that they should pay defendants' attorney's fees.

The action was commenced in the State Superior Court on May 15, 1992, in Fairbanks, and a summons was issued at that time. The complaint is short. Essentially, it alleges that plaintiff Cox sought employment with the Federal Aviation Administration ("FAA") in Alaska; and, in connection with the selection process, FAA agents telephoned defendant John A. Nasche ("Nasche"), a former supervisor of Cox, who, acting within the course and scope of his employment with Flightsafety International, Inc. ("Flightsafety"), Cox's former employer, told the FAA certain things which resulted in Cox's not receiving the job. In Cox's view, Nasche's response to the FAA's inquiry constituted intentional and malicious misrepresentation.

The summons issued by the superior court indicated that defendants were located in Fort Worth, Texas and in the State of New York. On June 2, 1992, Anchorage counsel entered an appearance for both defendants, removed the case to federal court and moved to have out-of-state counsel admitted to practice in this Court for this matter. On June 11, 1992, this Court acknowledged removal and gave directions for further proceedings.

In the meantime, also on June 11, 1992, attorney Doe, acting for plaintiff, requested that the Clerk of this Court in Fairbanks enter default against the defendants. In her affidavit, Doe stated that defendant Nasche was served by registered mail on May 18, 1992, and that defendant Flightsafety was served the following day—May 19, 1992—also by registered mail. Default was entered by the Clerk in Fairbanks the following day, on June 12, 1992. On the same day, Friday, June 12, 1992, defendants mailed their an-

1. The misconduct in this case does not warrant further public censure and so I have referred to the lawyers by pseudonyms.

swer from Anchorage. It was received in Fairbanks and filed on Monday, June 15, 1992.

On Thursday, June 18, 1992, Roe filed a motion for a default judgment in the amount of $1,049,521.79. On June 25, 1992, defendants moved to set aside the default and filed opposition to the request for default judgment. On July 8, 1992, Roe, on plaintiff's behalf, filed a 21-page memorandum opposing the request to set aside the default and urging the entry of judgment by default in the requested amount. Roe supported his opposition by contending, *"Finally, plaintiff will be prejudiced if the default is vacated. Substantial attorney's fees and costs have been incurred in moving for entry of default and default judgment."* (Emphasis supplied). Plaintiff's counsel also filed additional memoranda.

▮ On August 6, 1992, this Court entered an Order denying the motion for default judgment and setting aside the entry of default. I concluded, based only on the record as it then existed, that Doe and Roe had engaged in conduct subject to sanction by filing a needless motion for entry of default and for default judgment and then persevering with vexatious opposition to defendant's motion to set aside the entry of default. It appeared to me that a party should not seek the entry of default against a party she knows is represented by an attorney without

at least checking with that attorney to determine whether the party intends to litigate. *See, e.g., City of Valdez v. Salomon,* 637 P.2d 298, 299 n. 1 (Alaska 1981) (purpose of default is to prevent a procrastinating defendant from unduly delaying a case; it should not be regarded as a tactical tool by which plaintiff may obtain judgment without the bother and expense of litigation).[2] I concluded that Doe and Roe should pay defendant's costs of setting aside the entry of default and, by implication, that Doe and Roe should not charge their client for their own time, because their Federal Rule of Civil Procedure ("FRCP") 55 proceedings were doomed from their inception and no competent lawyer could have believed that the Court would not, on application, set aside the default and require the matter to be litigated on its merits. It appeared that Doe and Roe were simply playing hardball in the hope of harassing their opponents and running up their costs with no real expectation that the motions they made would be sustained. I felt that the attorney's fees actually spent were a good measure of the "excess costs" generated by the intransigence of Doe and Roe. *See* Local General Rule 36(D).

On August 17, 1992, Doe and Roe moved for reconsideration. While their motion is supported by a nine-page memorandum, it can briefly be summarized as stating: (1) We

---

2. In *City of Valdez v. Salomon,* 637 P.2d 298, 299 (Alaska 1981), *quoting* American College of Trial Lawyers Code of Trial Conduct No. 14(a), at 149 (1971–72), the court stated:

When [a lawyer] knows the identity of a lawyer representing an opposing party, he should not take advantage of the lawyer by causing any default or dismissal to be entered without first inquiring about the opposing lawyer's intention to proceed.

The court went on to hold that violation of this rule constituted a violation of DR 7–106(C)(5) of the Code of Professional Responsibility. *Id.* at 299 n. 1. It is important to stress that this Court has not adopted the Code of Professional Responsibility as a part of the local rules of this Court. *Cf., United States v. Lopez,* 765 F.Supp. 1433, 1453–54 & n. 40 (N.D.Cal.1991), *vacated on other grounds,* 989 F.2d 1032 (9th Cir.1993) (discussing federal districts—not including Alaska—that have adopted the Code of Professional Responsibility as part of the local rules of court). In the absence of such a local rule, Doe was not

legally obligated to notify defendants before seeking the entry of default against them even though she knew that an attorney had entered an appearance and that the defendants had demonstrated a clear intention to defend the suit. *See Hawaii Carpenters' Trust Funds v. Stone,* 794 F.2d 508, 512 (9th Cir.1986).

I am not sanctioning Doe for failure to give notice before seeking the entry of default. I am not adopting the rule of *Salomon* by court decision and then applying it retroactively to Doe and Roe. My criticism of them is that they engaged in motion practice with no hope of success, for the sole purpose of running up costs and attorney's fees, and thereby engaged in bad faith litigation. *See Roadway Express, Inc. v. Piper,* 447 U.S. 752, 765–68, 100 S.Ct. 2455, 2463–65, 65 L.Ed.2d 488 (1980) (bad faith may be found in the manner of conducting litigation as well as in commencing unfounded litigation). Doe and Roe violated 28 U.S.C. § 1927, Federal Rule of Civil Procedure 11, and Local General Rules 5(H) and 36(D). I am not sanctioning them for also violating DR 7–106(C)(5).

did what you said we did; (2) we are proud that we did it; (3) we will do it again given the opportunity; and (4) we defy you to impose sanctions on us because you have no jurisdiction to do so and we will appeal to the Ninth Circuit, and the Circuit will applaud us and hold us up to the regional Bar Association as an example of zealous client representation. Perhaps,[3] Doe and Roe also correctly pointed out that sanctions should not be imposed without notice and an opportunity to be heard. *See* Local General Rule 36(E).

In the meantime, defendants opposed the motion for reconsideration, citing as additional support for sanctions 28 U.S.C. § 1927 and Local General Rule 5(H). I agreed with Doe and Roe that they should not be sanctioned without formal notice and an opportunity to be heard. Therefore, I issued an Order to show cause why attorney's fees should not be assessed against them personally, in order to provide them with: (1) Notice of my concern that they had engaged in vexatious motion practice without hope of success and for the sole purpose of harassment, and notice of the measure of sanction to be imposed,[4] and (2) an opportunity to be heard.[5]

Doe and Roe filed a supplemental motion at Docket No. 30. Like their initial memorandum, it is also eight pages long, but makes essentially the same point. Counsel are incensed that their conduct has been criticized and anxiously await the opportunity to vindicate themselves before a more understanding court. This memorandum was supported by two affidavits from local attorneys who are not involved in this litigation, who argue, in essence, that if a lawyer does not pursue entry of default against her out-of-state opponent on the twenty-third day after service of process by mail and within nine days of removal to federal court, she will be sued for malpractice when her client is forced to prove her case and loses.[6] From

---

**3.** Had Doe and Roe conceded the possibility that they may have overreached, leniency might be warranted. The conviction with which they maintain that they were only zealously representing their client makes it clear that they just do not understand my concerns and that this is not a case in which judicial displeasure, however voiced, would have any significant impact. *But see Zambrano v. City of Tustin*, 885 F.2d 1473, 1480 n. 24 (9th Cir.1989) (as anyone experienced in litigation knows, lectures in open court are often sufficient to properly sanction counsel because of the embarrassment involved). Doe and Roe are not embarrassed in this case.

**4.** The measure of sanctions was to be the attorney's fees defendants incurred in having the entry of default set aside and in opposing the request for the entry of default judgment.

**5.** The Local Rules generally provide that parties may be heard through written submissions. Local General Rule 5. Given the tremendous distances in Alaska, hearings in open court are, in most cases, impractical. Doe and Roe reside and practice in Fairbanks. This Court sits in Anchorage. The practice of substituting written submissions for oral hearings is authorized by Federal Rules of Civil Procedure 43(e) and 78. There are no disputed issues of historical fact, and so an evidentiary hearing would serve no purpose. Oral argument would also appear to be undesirable because it would simply increase the costs to the parties without adding anything to the record. *See* Local General Rule 5(C). Specifically, I find that, "the facts and legal arguments are adequately presented in the briefs and record and the decisional process would not be significantly aided by oral argument." *Cf.* Fed.

R.App.P. 34(a)(3) (applying this test, among others, in determining whether to hold oral argument on appeal).

**6.** While I have the greatest respect for the two attorneys who filed the affidavits, I am unpersuaded by their argument that a lawyer risks a serious malpractice case if she does not default her adversary on the 23rd day after service by mail and within nine days of removal to federal court. This is particularly true in a case where a meritorious defense—conditional privilege—is suggested by the complaint itself, *see Jones v. Central Peninsula General Hosp.*, 779 P.2d 783, 789–91 (Alaska 1989), and the defendant has given a clear indication of an intent to litigate by removing the case to federal court and having both in-state and out-of-state counsel enter appearances. I am particularly troubled by the attorneys' affidavits because any action for malpractice against an attorney extending courtesy to her opponent would have to be brought under Alaska state law, and the Alaska Supreme Court has specifically condemned the very conduct committed by Doe and Roe in this case. *See Salomon*, 637 P.2d at 299 & n. 1 (holding it was a violation of the Canons of Professional Responsibility to enter default against a party represented by a lawyer without contacting lawyer first regarding her intention to proceed). It appears that the lawyer's affidavits supporting Doe and Roe in this case should be viewed as a professional courtesy and not as an expression of a valid expert opinion regarding local practice. *See also Hertz v. Berzanske*, 704 P.2d 767, 772–73 (Alaska 1985). As the Alaska Supreme Court noted in *Cook v. Aurora Motors, Inc.*, 503 P.2d

their affidavits, it is clear that neither Doe nor Roe wishes to disassociate herself or himself from plaintiff's default-judgment strategy in this case. Neither asks for individual consideration. They clearly wish to rise or fall together. Their wish will be granted.

## DISCUSSION

Federal Rule of Civil Procedure 1 provides that the rules, including by necessary implication FRCP 55, "shall be construed to secure the just, speedy, and inexpensive determination of every action." An attorney's role is not that of a piranha, constantly on the lookout for blood in the water or of a rabid dog, anxious to bite anything within its reach. Attorneys are learned professionals whose function is to serve the public by facilitating the dispassionate resolution of intractable disputes. Similarly, a court of law is not an arena where gladiators vie for public attention by taking cheap shots at each other. It is, rather, a solemn place where conscientious men and women meet to serve the public and bring their intelligence, education, and experience to the aid of that public in order to act as intermediaries and to mediate disagreements that might otherwise lead to violence and overreaching. On occasion, it is true, some attorneys engage in piranha-like practices and others emulate rabid dogs. Some attorneys no doubt see the courts as arenas and litigation as gladiatorial combat. The Seventh Circuit has recently completed a study of incivility in practice, and the Ninth Circuit Judicial Conference addressed that issue last summer. But incivil attorneys are far fewer than public fears might suggest and adverse publicity might indicate. The courts have the duty to deal with such attorneys fairly and dispassionately on the rare occasions when they are encountered.

This proceeding presents three simple related issues: (1) Could Doe have been acting in good faith and have reasonably believed that the entry of default she requested would not be challenged and, if challenged, set aside; (2) could Roe have been acting in good faith and have reasonably believed that his request for a default judgment, in the amount of one million dollars, would not be challenged and, if challenged, denied; and (3) could either Doe or Roe have believed that their 21–page memorandum in opposition to the motion to set aside the entry of default and in opposition to the entry of default judgment was anything other than a total waste of their time, their clients' money, and, to the extent opposed, their opponents' money? If the answer to one or more of these questions is in the affirmative, no matter how negligent this Court believes Doe and Roe to have been, an adverse award of attorney's fees is inappropriate. If, however, the only possible conclusion from the undisputed facts is that no reasonable attorney, acting in good faith, could have believed that the time spent pursuing a FRCP 55 action in this case would result in any benefit to Stephen L. Cox, then the Court must reluctantly conclude that Doe and Roe were not proceeding in good faith and that an award of attorney's fees against them personally is warranted. See Zambrano v. City of Tustin, 885 F.2d 1473, 1481–482 (9th Cir.1989). In applying Zambrano to the facts of this case, it is important to bear in mind that the primary concern in Zambrano was that Congress had not expressly authorized the award of attorney's fees against a lawyer for the conduct found to be sanctionable in that case, (i.e., for the failure of a lawyer admitted to practice before the Southern District of California in San Diego to separately seek and obtain admission to practice before the Central District of California in Los Angeles). In contrast, Congress has expressly made the filing of vexatious and unnecessary motions and oppositions sanctionable by an adverse award of attorney's fees against lawyers personally. See 28 U.S.C. § 1927 and Fed.R.Civ.P. 11.[7] Neither § 1927 nor FRCP 11 specifically refer to subjective bad faith. Consequently, it is not clear that bad faith need be a prerequi-

1046, 1049 n. 6 (Alaska 1972), notification prior to taking default or seeking dismissal is a highly desirable courtesy to the opposing side, which can help avoid unnecessary, time-consuming motions before the Court. This is the precise goal of 28 U.S.C. § 1927, Fed.R. of Civ.P. 11, and Local General Rules 5(H) and 36(D).

7. Rule 11 was approved by Congress. See Zambrano, 885 F.2d at 1481 n. 26.

site for an award of attorney's fees in cases like the instant case. Because the circumstantial evidence in this case permits only one inference—that Doe and Roe acted in bad faith—it is unnecessary to pursue this matter further. *Cf., Yagman v. Republic Insurance,* 987 F.2d 622 (9th Cir.1993) (finding of Rule 11 violation determined objectively; no need for subjective bad faith).

■ Local General Rule 36(D) provides, in part, that "An attorney who ... presents to the Court unnecessary motions or unwarranted opposition to motions ... or who otherwise so multiplies the proceedings in any case as to increase the costs of the case unreasonably and vexatiously; may be required by the Court to satisfy personally such excess costs." The facts regarding Doe and Roe's efforts to win a default judgment in this case are not in dispute; the only dispute concerns the inferences to be drawn from the undisputed facts. Thus, there is no need for an evidentiary hearing. The undisputed facts establish that Doe and Roe ignored the admonition in FRCP 1 to seek, "the just, speedy, and inexpensive determination of every action," when they first sought the entry of default knowing that their opponents intended to litigate. The defendants' intention to contest the case was made clear by their timely removal of the case to federal court, and by their entering the appearance of local counsel and seeking admission of out-of-state counsel. Bearing in mind that the defendants reside in Fort Worth, Texas and the State of New York, were served by mail twenty-three days before entry of default was sought, and timely removed the case to federal court fourteen days after they were served with process and nine days before entry of default was sought, it is inconceivable that any judge would not find good cause for the setting aside of the default entered in this case upon application. *See* Fed.R.Civ.P. 55(c). It is also inconceivable that a trial court would enter default judgment for over a million dollars when faced with undisputed

facts like the ones in this case; or that if a district judge, in a moment of mindlessness, did so decide, that any circuit court would uphold such a decision. *See United States v. Moradi,* 673 F.2d 725 (4th Cir.1982). It is instructive that Doe sought default in this case the day this Court acknowledged the removal and directed further proceedings. This case is easily distinguishable from cases where an attorney, despairing that her opponent will ever join issue, seeks the entry of default after pleading unsuccessfully with her opponent to please file an answer. *Cf. Savarese v. Edrick Transfer & Storage, Inc.,* 513 F.2d 140, (9th Cir.1975) (affirming district court's denial of motions to set aside and vacate judgment, where complaint was filed April 6, 1972, the case was removed May 31, 1972, and no further action was taken until default was entered almost eight months thereafter on January 22, 1973). Consequently, the only possible inference that a judge could draw from the facts set out in Doe and Roe's affidavits is that they sought default and default judgment and filed extensive opposition to the reasonable request to set aside the default for the sole purpose of harassing their opposition and increasing costs. Local General Rule 36(D) provides ample justification for requiring Doe and Roe to pay those excess costs.

■ Doe and Roe argue for a different interpretation of Rule 36(D) in reliance on *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980). They contend that the phrase "excess costs" in Rule 36(D) does not include attorney's fees. It is true that the Supreme Court in 1980 did so interpret former 28 U.S.C. § 1927, and that the statute and the local rule use language that is similar, although not identical. Nevertheless, there is nothing in the rule to suggest that it was modeled on the statute, and the rule was adopted in December 1983 by Alaska judges familiar with local practice, not by the national Congress in 1813 or in 1853.[8] *See Roadway,* 447

---

8. I refer to local practice in Alaska for two reasons. First, we are interpreting a local rule adopted by local judges, two of whom were former state superior court judges and one of whom was a former justice of the Alaska Supreme Court. In determining what Alaska federal

judges mean by a rule they adopt, it is relevant to consider the different background they bring to the question. Alaska follows the English Rule, which includes attorney's fees as costs, whereas many jurisdictions follow the American Rule, which does not consider attorney's fees as costs.

U.S. at 759–61, 100 S.Ct. at 2460–61. It is instructive that the local rule was adopted long after Congress had amended the statute to reverse the Supreme Court's interpretation, and specifically provide that vexatious practices, such as those engaged in by Doe and Roe, may result in a recovery of attorney's fees as a sanction. *See* The Antitrust Procedural Improvements Act of 1980, Pub.L. No. 96–349 § 3, 94 Stat. 1154, 1156 (Sept. 12, 1980). Although the statutory change was pending in Congress when *Roadway* was decided, the rapidity with which Congress rejected *Roadway* makes it seem reasonable to view the amendment as a clarification of the phrase "excess costs," rather than viewing it as a change in meaning. In any event, Rule 36(D) seems to be aimed primarily at vexatious motion practice occurring after the filing of the initial pleadings and, if so, the only "excess costs" incurred would be those associated with attorney's fees. Filing fees are not paid in connection with motion practice. *Roadway*, 447 U.S. at 757–65, 100 S.Ct. at 2459; *cf.* 28 U.S.C. § 1920 (setting out the "costs" which the *Roadway* Court felt were covered by former § 1927). Interpreting the phrase "excess costs" in Rule 36(D) to exclude attorney's fees would render it devoid of content.[9] Interpreting "excess costs" to include attorney's fees finds further support in Local General Rule 5(H) which provides:

> **Frivolous and Unnecessary Motions; Penalty.** The presentation to the Court of frivolous or unnecessary motions or opposition to motions which, in the judgment of the Court, unduly delay the progress of the action or proceedings ... subjects counsel presenting or filing such to imposition of costs and attorney's fees.

Further support for this interpretation comes from FRCP 11, which permits assessment of attorney's fees against a lawyer who interposes motions or oppositions for purposes of harassment or to cause delay. When all of these rules and statutes are read together, it is clear that the reference to "excess costs" in Local General Rule 36(D) includes attorney's fees generated in re-

---

*McDonough v. Lee*, 420 P.2d 459, 460–61 nn. 5–6 (Alaska 1966). In *McDonough*, the court noted that in 1900 Congress determined that an award of attorney's fees to the prevailing party would be "termed costs," and that the territorial legislature in 1923 and the state legislature, after statehood, ratified that view. (*Id.*)

There is a second reason for mentioning Alaska practice. Doe and Roe are correct that sanctions must be determined under federal, not state law. Nevertheless, it is possible that Doe and Roe practice more regularly in state court than they do in federal court. It is important to make it clear that their conduct does not reflect common local practice and that they could not have been mislead by local practice to believe that their conduct was acceptable. In fact, under Alaska law, it is clear that the default entered in this case would have been quickly set aside. *See Berzanske*, 704 P.2d at 772–73; *Salomon*, 637 P.2d at 299; *Kennedy v. First Nat'l Bank of Fairbanks*, 637 P.2d 297 (Alaska 1981); *cf., Cook v. Aurora Motors, Inc.*, 503 P.2d 1046, 1049 n. 6 (Alaska 1972). It is particularly significant that the Alaska Supreme Court's decision in *Salomon* indicates that Doe and Roe would be in violation of the Code of Professional Responsibility had they done in state court what they did in this Court. *Salomon*, 637 P.2d at 299 & n. 1 (ethical violation to enter default against party represented by attorney without first contacting attorney to determine how she wishes to proceed).

It is also significant that Doe and Roe would clearly be subject to sanction for their conduct under applicable state rules of civil procedure.

*See* Alaska Rules of Civil Procedure 77(j) and 95(a). Since the Code of Professional Responsibility has been adopted as a part of the Alaska State Rules of Court, violations of the Canons can result in sanctions. *See Davis v. Superior Court*, 580 P.2d 1176, 1179 (Alaska 1978); *Weidner v. Superior Court*, 715 P.2d 264, 265–66 (Alaska App.1986). Having said this, I will repeat that Doe and Roe are not being sanctioned for violation of state rules or Professional Canons. They are being sanctioned for litigating in bad faith and for violating local federal rules prohibiting the vexatious conducting of litigation.

**9.** It is not reasonable to assume that this court adopted a rule in 1983 which it intended to be narrower than the existing statute which addresses the same subject matter. It is more reasonable to interpret the statute and the rule as redundant, since the Supreme Court has held that Congressional authorization is a prerequisite to the enforcement of comparable local rules. Creating a redundant rule thus anticipates the requirement in *Zambrano:* that a district court, wishing to use an award of attorney's fees as a sanction against counsel, must both promulgate a rule and have Congressional authority. *Zambrano*, 885 F.2d at 1481–82. Here, § 1927 provides the Congressional Authority and Local General Rule 36(D), read *in pari materia* with Local General Rule 5(H), constitute the local rules.

sponse to frivolous, vexatious, and unnecessary motions and oppositions to motions.

■ These rules and statutes gave Doe and Roe advance notice that in Federal Court, filing motions with no hope that they will be granted may subject an attorney to personal liability for the attorney's fees that his or her intransigence caused, unless there is some hope that the adverse decision might be reversed on appeal. Because it is not reasonable to assume that the entry of default in this case would be sustained in either the trial court or in an appellate court, Doe and Roe must have known that they were simply harassing their opponent with their use of FRCP 55. Of course, proof of negligence, even gross negligence, is insufficient to support an award of sanctions. Where, however, we are dealing with experienced members of the bar with years of practical experience, it is reasonable to infer that what a reasonable lawyer would know these lawyers knew, and that they intentionally engaged in vexatious conduct in order to harass

their opponents and increase the costs of litigation.[10]

■ I do not impose sanctions regularly. In fact, in the almost twenty-five years that I have been a judge, I have done so on very few occasions. I am aware that certain judges of the Ninth Circuit are sensitive to the use of sanctions against lawyers, and particularly awards of attorney's fees, because they fear that such sanctions may become a club with which to beat lawyers with unpopular clients, particularly lawyers for plaintiffs in civil-rights cases. Certainly, harassing lawyers because of the clients they represent or because they press unpopular arguments or seek changes in the law would be an inappropriate use of the power to sanction. *See, e.g., Zambrano v. City of Tustin*, 885 F.2d 1473 (9th Cir.1989). Judges must be even-handed in imposing sanctions. Furthermore, a judge should never sanction out-of-district lawyers simply because they are unfamiliar with unusual local rules, or sanction recently-admitted lawyers who

10. I expressly find that Doe and Roe acted in bad faith and award attorney's fees to the defendants. *Zambrano*, 885 F.2d at 1481–82. In so doing, I am not contending that Doe and Roe are incompetent or deserving of suspension or disbarment. Nor do I mean to suggest that they have any special animosity to these defendants or malice against opposing counsel. I am merely finding, based on the totality of the record, that no attorney with the experience and education that I know Doe and Roe to have, acting in good faith, could have believed that a default judgment would be sustained in this or the appellate court on the facts of this case. From that conclusion, I infer that Doe and Roe were, intentionally and in bad faith, running up the costs in this case to harass their opponents. Their conduct goes beyond mere negligence or even recklessness. In reaching these conclusions, I take Doe and Roe at their word and find that they did review the law in advance. Consequently, I assume they found what a legal inquiry would have disclosed; namely, that the Ninth Circuit is primarily concerned with any culpable conduct by the defaulting party. *See, e.g.,* 6 J. Moore, Moore's Federal Practice, para. 55.10[1] (2d Ed.1993); 10 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure, §§ 2692 and 2694 (1983). There is no indication that such considerations motivated defendants' actions in this case. Defendants were attempting to litigate. We must bear in mind that this case is pending in Fairbanks, the court and counsel for one of the defendants are in Anchorage, the other defense counsel is out-of-state, and that the

defendants reside, respectively, in Texas and New York. Consideration must also be given to whether the defendant has a meritorious defense, i.e., some basis for contesting the plaintiff's claim that indicates a possibility that the matter might be resolved differently, after a full trial, than it would be by default. *See Hawaii Carpenters' Trust Funds v. Stone*, 794 F.2d 508, 513 (9th Cir.1986). Here, conditional privilege is suggested by the complaint itself. As a matter of fact, defendants appear to have a number of meritorious defenses, but it is not necessary to address them here. Did Doe and Roe contemplate any prejudice to their client if the default were set aside? It is disturbing that the only prejudice suggested by plaintiff is the attorney's fees generated by Doe and Roe in seeking the entry of default, the entry of default judgment, and opposing the motion to set aside the default. Consideration would also have to be given to the length of the delay: here 23 days from service of process by mail and nine days from the date of removal. Finally, consideration would have to be given to the amount requested, which was in excess of $1 million. These factors are discussed in *Meadows v. Dominican Republic*, 817 F.2d 517, 521 (9th Cir.), *cert. denied*, 484 U.S. 976, 108 S.Ct. 486, 98 L.Ed.2d 485 (1987); *Mendoza v. Wight Vineyard Management*, 783 F.2d 941, 945–46 (9th Cir.1986); *see also Berzanske*, 704 P.2d at 770–71 (discussing federal law). No reasonable attorney, acting in good faith, could apply these factors to this case and not conclude that Doe and Roe's actions amounted to economic waste.

might easily be intimidated by such sanctions. The court must also be sensitive to lawyers who are in poor economic straits and succumb to the irrational demands of strong-willed clients. In short, the court must consider the totality of the circumstances. Here, however, there is no suggestion that either Doe and Roe or their client are unpopular or that their cause of action is unusual. Doe and Roe have many years of experience and are associated with an established firm which, to my knowledge, has many well-paying clients. There is nothing in the record to suggest that the plaintiff, Stephen Cox, forced a strategy on his lawyers. Rather, Doe and Roe intentionally churned this case with hopeless motions and oppositions, needlessly causing their opponents to incur attorney's fees. Had defendants delayed any significant time in filing their answer after removal, they would have assumed the risk that default would be entered against them and would have been required to bear their own fees and, possibly, even Cox's fees associated with obtaining the entry of default—at least, fees incurred up to the point that they moved to set aside the default. *See Nilsson, Robbins, Dalgarn, Berliner, Carson & Wurst v. Louisiana Hydrolec*, 854 F.2d 1538, 1546–47 (9th Cir.1988). However, defendants did not engage in unusual delay in this case, given the nature of the case, the residence of the defendants, the location of the court house, the fact that this case was filed in Fairbanks, and the brief time that elapsed from removal to entry of default. The unseemly rush with which Doe and Roe sought the entry of default and the vigor with which they multiplied proceedings regarding the entry of default and default judgment serve to distinguish this case from other cases discussed in the case law and make it clear that the lawyer time spent on these issues was totally useless and the fees incurred by both sides unnecessary.[11] Those fees are a proper measure of the loss occasioned by the conduct of Doe and Roe. *Zambrano*, 885 F.2d at 1480 (sanctions must be proportionate to the offense and commensurate with principles of restraint and dignity inherent in the exercise of judicial power.) [12]

11. I have read the cases relied upon by Doe and Roe. *In re Hammer*, 940 F.2d 524 (9th Cir.1991), involved a debtor who filed for bankruptcy and then concealed his address. Default judgment was entered against him, and he waited almost two years to have it set aside. The cases apply different standards to setting aside the entry of default under FRCP 55(c) and to setting aside a default judgment under FRCP 60(b). *Direct Mail Specialists, Inc. v. Eclat Computerized Technologies, Inc.*, 840 F.2d 685, 689 (9th Cir.1988), a case where the defendant did nothing to demonstrate a clear purpose to defend the suit; *Benny v. Pipes*, 799 F.2d 489 (9th Cir.1986), *amended*, 807 F.2d 1514 (9th Cir.), *cert. denied*, 484 U.S. 870, 108 S.Ct. 198, 98 L.Ed.2d 149 (1987), was a 42 U.S.C. § 1983 case where the court found fairly clear dilatory tactics on the part of the defendants; *Pena v. Seguros La Comercial, S.A.*, 770 F.2d 811 (9th Cir.1985), involved a finding similar to that in *Hammer, supra*, that the defendant had hidden its address to complicate service of process. In *Hawaii Carpenters' Trust Funds v. Stone*, 794 F.2d 508 (9th Cir.1986), the court found a pattern of default and questioned whether there was a meritorious defense. Finally, in *Nilsson, Robbins, Dalgarn, Berliner, Carson & Wurst v. Louisiana Hydrolec*, 854 F.2d 1538, 1546–47 (9th Cir.1988), the court awarded the plaintiff fees as a condition of setting aside a default where the defendant was extremely dilatory. In fairness to Doe and Roe, if I were the district judge in the cases they cite, I would have exercised discretion and would have quickly set aside the default or default judgment if convinced that the defendants were not using delay as a tactical device, after inquiring into whether they had a meritorious defense. The district judges in those cases were probably harsher than I would have been. But none of these cases involve overreaching by the plaintiff such that sanctions would be warranted. In contrast, Doe and Roe engaged in extreme conduct.

12. While I conclude that Doe and Roe should personally bear all of the costs incurred by both sides in connection with the litigation surrounding FRCP 55, I am only directing that they pay the costs incurred by defendants. How they resolve the matter with their client, Stephen Cox, is a matter to be decided between the attorneys and their client.