Jason P. WRIGHT, Appellant,

v.

Kelly D. SHORTEN, Appellee.

No. S–8133.

Supreme Court of Alaska.

Sept. 11, 1998.

Tara N. Logsdon, Tull & Associates, Palmer, for Appellant.

No appearance by Appellee.

Before MATTHEWS, C.J., COMPTON, EASTAUGH, FABE, and BRYNER, JJ.

## OPINION

FABE, Justice.

## I. INTRODUCTION

Kelly Shorten filed for sole legal custody of her daughter, alleging that Jason Wright was the father and seeking child support from him. Upon receipt of the filing, Wright, proceeding *pro se*, wrote to the superior court denying paternity. Because it did not view Wright's response as an answer, the court entered default judgment against him. Wright filed an Alaska Civil Rule 60(b) motion to set aside the default judgment, arguing that his letter constituted an answer to Shorten's complaint and that any defect in its form resulted from mistake or excusable neglect. The superior court denied Wright's motion and he appeals. Because Wright's letter should have been treated as an answer to Shorten's complaint, we reverse and remand.

## II. FACTS AND PROCEEDINGS

Jason Wright and Kelly Shorten were married in February 1991 in California. Shorten gave birth to Sally[1] in December 1992. The birth certificate lists Wright as the child's father. At some point after Sally's birth, the couple separated. Shorten moved with Sally to Alaska in September 1993. In May 1995 Shorten filed a petition for dissolution of marriage. The petition was granted in September 1995. Because Wright was never actually served with the petition, and notice was by publication, the court made no findings regarding custody, visitation, or child support.

In April 1996 Shorten filed a "Complaint for Custody," claiming that Wright was Sally's "natural" father and seeking child support from him. Wright was served with the complaint in California on July 25, 1996, and responded five days later in a letter to the court. He denied paternity, referring to medical documentation in support of his claim:

I must declare that I am not the natural parent of [Sally] Wright. I am currently investigating a facility that will test Kelly [Shorten], [Sally] and myself to establish scientific proof that I am not a parent. I have medical documentation of the Blood Types of all three of us. It is obvious with just this amount of information that I am not the Father....

I will contact the Court and the Plaintiff as soon as I find a Facility that will test myself and the child. Please send me any information/advice as to exactly how to proceed with this issue. Any other evidence needed will be provided upon request (Blood types, etc.).

The standing master in the case treated Wright's letter as an appearance, not as an answer. In October 1996 Wright wrote to the court to explain that he had arranged for genetic testing for Shorten, Sally, and himself, and to notify the court of his new address. It appears that the court may not have received this letter, as evidenced by the court's statement at a later date that, after Wright's July 30, 1996 letter, "[n]o further response or pleadings were received by the court from defendant until ... on or about February 7, 1997."

In November 1996 Shorten applied for entry of a default and default judgment against Wright. Although it appears that Shorten tried to send a copy of the application to Wright, he claims that he was never notified of the default proceedings. Nothing in the

---

1. Sally is a pseudonym.

record indicates that Wright was notified. The clerk of court entered a default later that month on the ground that Wright had "failed to plead in or otherwise defend this action." A default hearing was held before a standing master on December 10, 1996. The standing master concluded that the parties were Sally's natural parents, that Shorten should receive custody, and that Wright should be ordered to pay $375 a month in child support.[2] On December 30, 1996, the superior court issued a child custody and support order incorporating the standing master's findings of fact and conclusions of law.

On February 1, 1997, counsel entered an appearance for Wright for the first time. Six days later, Wright filed a formal answer to the complaint for custody in which he reiterated his denial of paternity. In a motion filed the same day, Wright provided evidence that his and Shorten's blood types are "O positive" and that Sally's is "A negative." He also produced a medical text stating that "if both parents are blood type O, only children with blood type O can be conceived." The clerk of court returned the answer to counsel as untimely because default had already been entered. Wright filed a Rule 60(b) motion for relief from default judgment in March 1997, arguing that his letter denying paternity constituted an answer adequate to avoid default and that he had never been served with Shorten's default application.

The standing master then issued a report recommending that Wright's claims be rejected. The superior court accepted the master's recommendation and affirmed the default judgment. Wright appeals the court's denial of his Rule 60(b) motion. Shorten has not filed a brief in this appeal.

## III. DISCUSSION

### A. Standard of Review

■ We review the denial of Wright's Rule 60(b) motion for abuse of discretion.[3] "We will not find an abuse of discretion unless we are left with a definite and firm conviction on the whole record that a mistake has been made."[4] Furthermore, absent unusual circumstances, "we will not reverse the superior court's denial of a Rule 60(b) motion as an abuse of discretion where the movant has not made a showing of a meritorious defense."[5]

### B. It Was Error to Deny Relief under Rule 60(b).

Wright argues that the default judgment against him should have been set aside under Rule 60(b)(1) because his July 30, 1996 letter should have been treated as an answer and because he had a meritorious defense to the claim that he owed child support. We agree.

■ Rule 60(b)(1) provides that a court may relieve a party from a final judgment for "mistake, inadvertence, surprise or excusable neglect."[6] "The purpose of [Rule] 60(b) is to provide relief from judgments which, for one reason or another, are unjust."[7] Entry of default judgment precludes a trial on the merits of an issue. Although we recognize that setting aside a final judgment may disrupt the judicial process,[8] we have estab-

---

**2.** This figure was based upon 20% of Wright's income, which Shorten estimated at $30,000 a year; the standing master estimated that Wright would pay 25% of his income in taxes.

**3.** See Johnson v. Doris, 933 P.2d 1139, 1142 (Alaska 1997) (citation omitted).

**4.** Id.

**5.** Balchen v. Balchen, 566 P.2d 1324, 1328 n. 11 (Alaska 1977).

**6.** Alaska Rule of Civil Procedure 60(b) provides in relevant part:

Mistakes—Inadvertence—Excusable Neglect—Newly Discovered Evidence—Fraud—Etc. On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons:
(1) mistake, inadvertence, surprise or excusable neglect; . . . .

**7.** Wellmix, Inc. v. City of Anchorage, 471 P.2d 408, 411–12 n. 13 (Alaska 1970) (citation omitted).

**8.** See Hertz v. Berzanske, 704 P.2d 767, 770–71 (Alaska 1985).

lished that a trial on the merits is preferable to a default judgment.[9]

### 1. It was error not to treat Wright's letter as an answer.

■ We turn first to Wright's contention that the trial court erred by treating his July 30, 1996 letter as an appearance instead of as an answer. Wright argues that his denial of paternity in the letter "constituted a complete defense to the relief sought against him." He characterizes any technical defect in his letter as one of mistake, inadvertence, or excusable neglect under Rule 60(b)(1).

■ Pleadings should be construed liberally.[10] Where an affirmative defense "provides the opponent fair notice of the nature of the defense," it is adequately pleaded.[11] The Alaska Rules of Civil Procedure provide that "[a]ll pleadings shall be so construed as to do substantial justice,"[12] that averments "shall be simple, concise and direct," and that "[n]o technical forms of pleading or motions are required."[13]

■ Moreover, we hold the pleadings of pro se litigants "to less stringent standards than those of lawyers."[14] Where a pro se litigant's default results from " 'lack of familiarity with the rules,' " rather than " 'gross neglect or lack of good faith,' "[15] and where the litigant is "unversed in the rules of civil procedure," setting aside a default judgment may be warranted.[16] Indeed, in some cases a trial court has a duty to inform pro se litigants of defects in their pleadings and to give them an opportunity to remedy those defects.[17]

Given the general rule that pleadings are construed liberally, and the relaxed standards for pro se pleadings, Wright's letter should have been considered an answer to Shorten's complaint. It is unclear what deficiencies the superior court saw in Wright's letter.[18] The letter was timely and responded directly to the allegation that Wright was Sally's biological father.[19] It provided fair notice of the nature of Wright's defense.[20] We attribute any technical deficiencies in complying with the rules to Wright's inexperience, not bad faith or gross neglect.[21] In fact, Wright's request for information "as to exactly how to proceed" illustrates his inexperience and good faith.

■ Given our determination that Wright established mistake or excusable neglect under Rule 60(b)(1), we need not reach his alternative claim that he did not receive notice of Shorten's default application and that his failure to respond provided a separate basis for finding excusable neglect.[22] We

**9.** See Peter Pan Seafoods, Inc. v. Stepanoff, 650 P.2d 375, 380 (Alaska 1982).

**10.** See Gamble v. Northstore Partnership, 907 P.2d 477, 482 (Alaska 1995).

**11.** Id.

**12.** Alaska R. Civ. P. 8(f).

**13.** Alaska R. Civ. P. 8(e)(1).

**14.** Breck v. Ulmer, 745 P.2d 66, 75 (Alaska 1987).

**15.** Kennedy v. First Nat'l Bank of Fairbanks, 637 P.2d 297, 298 (Alaska 1981) (quoting Sanuita v. Hedberg, 404 P.2d 647, 651 (Alaska 1965)).

**16.** Rodriguez v. Rodriguez, 908 P.2d 1007, 1010 (Alaska 1995).

**17.** See Collins v. Arctic Builders & Home Ins. Co., 957 P.2d 980, 982 (Alaska 1998).

**18.** The superior court's denial of Wright's motion to set aside default judgment appears to have been influenced by its belief that Wright may have had access to counsel before sending his July 30, 1996 letter to the court:

> It is evident that defendant had access to legal counsel at least by July 9, 1996, even though no appearance was made until about February 7, 1997, since attorney Holliday made a request for a copy of the court file on the former date. If defendant had legal counsel in preparation of his July 30, 1996, letter, it is inexcusable that he did not make a proper and timely answer, as was finally attempted after default was entered.

But even if Wright contemplated hiring a lawyer or was assisted by counsel in preparation of his letter, we conclude that his denial of paternity constituted an answer sufficient to avoid default.

**19.** See Alaska R. Civ. P. 8(e)(1).

**20.** See Gamble, 907 P.2d at 482.

**21.** See Kennedy, 637 P.2d at 298.

**22.** Nothing in the record indicates that Wright was served with notice of Shorten's application.

note, however, that when a party has appeared in a proceeding, as the trial court concluded that Wright had, notice of an application for default is required under Rule 55(a)(2), and nonreceipt of service "may justify a finding of excusable neglect." [23]

### 2. *Wright presented a meritorious defense.*

A Rule 60(b) movant usually must show a meritorious defense.[24] A showing of a meritorious defense requires more than " 'a perfunctory statement that a meritorious defense exists.' " [25] The defaulting party must show that the result of granting relief may differ from the outcome of allowing the default judgment to stand.[26] This requirement may not apply where relief is predicated on a trial court's fundamental procedural error.

In this case, even assuming that the requirement does apply, we agree with Wright that his "defense of non-paternity is a meritorious defense." In response to Shorten's complaint, Wright squarely denied that he is Sally's biological father.[27] Further, he presented medical evidence in support of his claim. The result of granting relief is likely to differ from the outcome of allowing the default judgment to stand.

### IV. *CONCLUSION*

Because Wright has shown mistake or excusable neglect and has alleged a meritorious defense to the claims against him, we REVERSE the denial of Wright's Rule 60(b) motion and REMAND this matter for further proceedings.

---

Wright has consistently maintained that he never received notice. Indeed, Shorten acknowledged in her "Answer to Motion for Relief from Default Judg[ ]ment" that although she had mailed the required notices of default proceedings to Wright, "some of these notices were returned" to her, further suggesting that Wright may not have received them.

23. 4A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1148 (2d ed.1987).

24. *See Balchen,* 566 P.2d at 1328 n. 11.

25. *Melendrez v. Bode,* 941 P.2d 1254, 1258 (Alaska 1997) (quoting *Hertz,* 704 P.2d at 772).

26. *See id.* (citation omitted).

27. *Cf. Gregor v. Hodges,* 612 P.2d 1008, 1009 (Alaska 1980) (concluding that party asserted meritorious defense to claim that she had fraudulently obtained property by arguing that she had purchased the property).